Application of the STATE OF NEW YORK By Louis J. LEFKOWITZ, Attorney General of the State of New York, Petitioner,

For an Order enjoining and restraining TRANSCIENCE CORPORATION et al., Respondents.

No. 73 Civ. 1451.

United States District Court, S. D. New York.

June 1, 1973.

Louis J. Lefkowitz, Atty. Gen., New York City, for petitioner; by Samuel A. Hirshowitz, James Princiotta, Barnett Levy, New York City, of counsel.

Bass & Ullman, New York City, for respondents.

GURFEIN, District Judge.

This is a motion by Hon. Louis J. Lefkowitz, Attorney General for the State of New York to remand this action which was removed to the Federal District Court from the State Court by the defendants, 28 U.S.C. § 1441. The motion raises a novel question of federal-state jurisdiction in matters relating to patents and trademarks.

The original action was brought by the Attorney General in the Supreme Court, New York County, pursuant to N.Y.Executive Law § 63(12) (McKinney's Consol.Laws, c. 18, 1972).[1] A motion was made for an order restraining the respondents "from further engaging in the fraudulent and illegal practices and to direct and mandate respondents to refund and make restitution to the general public who has [sic] purchased the 'Sea Monkey Kit' from the respondents."

The petition itself alleges that the respondents have engaged in selling "Sea Monkeys" as a form of toy, directing their sales pitch to children in the State of New York at a selling price of 59¢ and $1.49; that purported "Sea Monkeys" are being sold with a placard containing the inscription "Sea Monkeys" and five items attached to the card by cellophane as follows: "Sea Monkey Living Plasm," "Sea Instant Life," "Sea Monkey Living Plasm Monkey Growth Food," and the "Instant Life" handbook. It is charged that the respondents made false statements to mislead purchasers into believing that they were purchasing some form of sea or marine life akin to or in some manner resembling the monkey. An advertisement is annexed (Ex. 3) which in part reads: "You'll gasp with AMAZEMENT when you see adorable sea monkeysR ACTUALLY being born ALIVE before your eyes in ONLY ONE SECOND! Guaranteed to LIVE and to GROW, this incredible NEW MIRACLE OF SCIENCE has been granted Patent # 3,673,986 by the United States Government for our ASTOUNDING DISCOVERY of the formula for making INSTANT LIFE!"

The State further alleges that "Sea Monkeys" are brine shrimp (artemia) and resemble brine shrimp and not miniature monkeys, and are not a miracle or anything new scientifically.

In the second cause of action the State alleges a violation of the State Insurance

---

1. N.Y.Executive Law § 63(12) (McKinney, 1972) reads:

12. Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney-general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the

former penal law or section one hundred thirty of the general business law, and the court may award the relief applied for or so much thereof as it may deem proper. The word "fraud" or "fraudulent" as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions.

In connection with any such proposed application, the attorney general is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules.

Law and complains that various representations made to the public were false and fraudulent as follows: (a) the trade name "Sea Monkeys" is a total misnomer and deceptive per se for brine shrimp; (b) the "Instant Life" preparation produces only a few living crustaceans and most hatch after 24 hours; (c) artemia have been able to withstand desiccation for as long as 15 years; (d) "Sea Monkeys" are not trainable; exposed to increased light intensity they appear to be phototropic; and (e) eagerness to please is not discernible and they cannot see or be trained.

Among the fraudulent statements listed are also that "Sea Monkeys" treated with love and care will respond to the touch; that they actually have arms, legs, tail appendages and a torso comparable to a primate, as shown in drawings; that they resemble monkeys; that the "Sea Monkeys" are covered by "Limited Group Sea Monkey Life Insurance Policy."

There are other allegations, but the foregoing are sufficient to show the nature of the action.

The Attorney General seeks, *inter alia,* to enjoin the respondents from the deceptive usage of the trademark "Sea Monkeys" or the usage of the name "Sea Monkeys" in the sale of brine shrimp and to enjoin the issuance of insurance policies covering "Sea Monkeys."

The respondents removed the action to this Court pursuant to 28 U.S.C. § 1441(a), (b). The removal petition alleged that this Court "had original jurisdiction under 28 U.S.C. § 1338(a) and 1338(b) since the action relates to patents, copyrights and trademarks, as well as a claim of unfair competition." The respondents assert that the essence of the complaint is that "the respondents are selling products bearing United States trademarks 'SEA MONKEYS,' and 'INSTANT LIFE,' and are making

certain claims as to the characteristics and nature of these products which names of these products and claims should be enjoined as being deceptive and fraudulent. The claims which are being made come within the scope of those permitted by the United States Patent Office pursuant to Patent No. 3,673,986 issued by the United States Patent Office and the names are covered by United States trademark Nos. 769,330; 769,331; 769,332, issued by the United States Patent Office on May 12, 1964. As such, this case is clearly one which is attacking the validity of the United States Patents and United States Trademarks and should be heard in the United States District Court for the Southern District of New York."

The complaint itself, however, does not allege that the action arises under the Constitution or laws of the United States. Rather it asserts that the respondents' business practices are "fraudulent and illegal" "within the meaning and intent of the Executive Law, § 63, subd. 12." The Attorney General does allege that Sea Monkeys "are not a miracle or anything new scientifically." While this would appear to be in direct contradiction to the presumptive validity of the patent under Federal law (35 U.S.C. § 282), there is no request made for relief that would declare the patent to be invalid.

We have been cited to no case where a State Attorney General has sought to restrain in a State Court alleged fraudulent activity involving the use of a federally registered trademark and federally issued patent.

Executive Law § 63(12) gives the Attorney General power to obtain by instituting action in the Supreme Court of New York, the relief he seeks here. He has similar authority to act under General Business Law § 349 (McKinney's Consol.Laws, c. 20, Supp.1972).[2]

2. General Business Law § 349 (McKinney Supp.1972) reads:
 **§ 349. Deceptive acts and practices unlawful**
 (a) Deceptive acts or practices in the conduct of any business, trade or com-

merce or in the furnishing of any service in this state are hereby declared unlawful.
 (b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corpora-

The District Courts have "original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases." 28 U.S.C. § 1338(a).

The statute studiously avoids making the District Court jurisdiction "exclusive" in trademark matters, although "original" jurisdiction is repetitively conferred by 15 U.S.C. § 1121 in actions arising under the Lanham Act.

## THE FEDERAL PATENT AND THE RIGHT TO REMOVE

■ The State Courts, of course, have no jurisdiction of cases "arising under" the patent laws of the United States. But the State Courts do have jurisdiction to determine *questions* arising under the patent laws, when merely incidental to cases which do not arise under that law. 7 Deller's Walker on Patents (2d ed.) § 471 at 19. In New

Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 473, 478, 32 S.Ct. 238, 56 L.Ed. 513 (1912), for example, the Supreme Court held that the State Court had jurisdiction over a case involving title and contracts. The Court there noted that "the allegations of the complainant's bill do not involve any construction of the meaning or effect or [the] patent [in question] . . . ." 223 U.S. at 479–480, 32 S.Ct. at 239.

In Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 259, 18 S.Ct. 62, 42 L. Ed. 458 (1897) the Court appears to have made a distinction between a "case" where the plaintiff sets up a right under the patent laws and a "question" which appears to be that raised in other types of cases such as contract and royalty suits which belong in the State Courts. "To constitute such a case the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite

tion or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

(c) Before any violation of this section is sought to be enjoined, the attorney general shall be required to give the person against whom such proceeding is contemplated notice by certified mail and an opportunity to show in writing within five business days after receipt of notice why proceedings should not be instituted against him, unless the attorney general shall find, in any case in which he seeks preliminary relief, that to give such notice and opportunity is not in the public interest.

(d) In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes ad-

ministered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

(e) Nothing in this section shall apply to any television or radio broadcasting station or to any publisher or printer of a newspaper, magazine or other form of printed advertising, who broadcasts, publishes, or prints the advertisement.

(f) In connection with any proposed proceeding under this section, the attorney general is authorized to take proof and make a determination of the relevant facts, and to issue subpoenas in accordance with the civil practice law and rules.

(g) This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state, and shall not supersede, amend or repeal any other law of this state under which the attorney general is authorized to take any action or conduct any inquiry.

Added L.1970, c. 43, § 2, eff. Sept. 1, 1970.

construction of these laws." 168 U.S. at 259, 18 S.Ct. at 64.

The issue sometimes arises in suits for unfair competition where the validity of the patent is questioned or the dispute touches on the question of infringement of the patent. 7 Deller's Walker on Patents (2d ed.) § 471 at 22. There are cases which hold for exclusive Federal jurisdiction and others which hold that State Courts alone have jurisdiction in the absence of diversity of citizenship. *Id.*

In Becher v. Contoure Laboratories, Inc., 279 U.S. 388, 390, 49 S.Ct. 356, 73 L.Ed. 752 (1929) the defendant had procured in breach of trust a patent based on confidential disclosures made to him by his employer. Although the precise holding appears to have been that the State Court could impose a constructive trust because the breach of trust arose *before* the granting of the patent, Justice Holmes went on to point out that even if the suit had the effect of finding Becher's patent void, that is not the effect of the judgment. "Establishing a fact and giving a specific effect to it by judgment are quite distinct." 279 U.S. at 391, 49 S.Ct. at 357. The *Becher* case sets its approval on a determination by the State Court of patent validity so long as it does not purport to act upon it *in rem.*

The New York Court of Appeals agrees that a State Court is precluded only from entertaining actions arising under the patent laws, not from deciding questions arising under those laws. American Harley Corp. v. Irvin Industries, Inc., 27 N.Y.2d 168, 174, 315 N.Y. S.2d 129, 263 N.E.2d 552 (1970).

Here there is a Federal patent grant (# 3,673,986) against which there is the State's contention that "Sea Monkeys" (brine shrimp) are not "anything new scientifically." There is a trademark "Sea Monkeys" on the Principal Register for Trademarks which is granted for "Packaged Brine Shrimp Eggs in Hatch-

ing Mix in Class 1" (#769,332, registered May 12, 1964). The State contends that it is fraud to call brine shrimp "Sea Monkeys." The finding sought is to be coupled with injunctive relief.

This is not a case between private parties involving title or the right to royalties. It is an action brought within the undoubted statutory powers of the Attorney General to protect consumers. This protection of consumers is a growing and important field, and as much scope as is permissible under the Constitution should be allowed to the States. There will inevitably be areas, however, where Federal statutes may preempt the field even where consumer protection is involved.

This is the kind of state-federal relation that does not admit of easy generalization. One need not assume that because the precedents for State jurisdiction in cases incidentally relating to patents were between private parties that an action by the State itself can never be a proper subject for such jurisdiction. The absence of precedent is not disturbing.

■ It is true that under the removal statute a defendant may remove from the State Court a case "founded on a claim or right arising under the Constitution, treaties or laws of the United States" provided it is one "of which the district courts have original jurisdiction." 28 U.S.C. § 1441(b). In fact the rule works curiously. Though the plaintiff who put forth the Federal claim is content to seek its vindication in the State tribunals, the defendant may insist upon an initial Federal forum. When, on the other hand, the plaintiff's reliance is on State law and the defendant claims a Federal defense, neither party may remove. Hart & Wechsler, The Federal Courts and The Federal System, p. 763 n. 2. "The plaintiff's claim itself must present a federal question 'unaided by anything alleged in an-

ticipation of avoidance of defenses which it is thought the defendant may interpose.' Taylor v. Anderson, 234 U.S. 74, 75–76 [34 S.Ct. 724, 58 L.Ed. 1218]; Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 [29 S.Ct. 42, 53 L.Ed. 126]." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950).

The Attorney General does not found his claim for relief on "a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). He founds his claim simply on the New York statutes which give the State Courts the power to grant the relief sought. The rule laid down by Justice Holmes in American Well Works v. Layne, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916) is still the rule of law. "A suit arises under the law that creates the cause of action. The fact that the justification may involve the validity and infringement of a patent is no more material to the question under what law the suit is brought than it would be in an action of contract." 241 U.S. at 260, 36 S.Ct. at 586. See also Gully v. First National Bank, 299 U.S. 109, 116, 57 S. Ct. 96, 81 L.Ed. 70 (1936). And the Supreme Court in more recent days has given the *coup de grace* to the notion that a State Court may never pass on the validity of a patent. See Lear, Inc. v. Adkins, 395 U.S. 653, 676, 89 S.Ct. 1902, 1914, 23 L.Ed.2d 610 (1969). The Court, in reversing on other grounds a decision of the Supreme Court of California, stated: "In this context, we believe that Lear must be required to address its arguments attacking the validity of the underlying patent to the California courts in the first instance." [3]

See also Koratron Co. Inc. v. Deering, Milliken, Inc., 418 F.2d 1314, 1317 (9 Cir. 1969).

Under prevailing doctrine it would appear, therefore, that the State Courts should not be ousted of jurisdiction since the complaint by the State does not "arise" under the patent laws and removal is improper.

It may be argued, however, that since any action over which the District Court has "original jurisdiction" may be removed, this is such a case. The argument can be made that the gravamen of the Attorney General's complaint, however disguised, is to attack the very validity of the patent and that in such light the complaint has to be a case "*arising under*" the patent laws. Suffice it to say that since the State seeks no adjudication *in rem* of the validity of the patent the State has jurisdiction of the suit brought under State law even though, by way of defense, the validity of the patent may well be in issue.[4]

If the action may not be removed even though it may involve the validity of a Federal patent, the case is *a fortiori* with respect to a trademark registered under the Lanham Act. Trademarks are not created by governmental grant as are patents nor by statute, as are copyrights. Trademark rights arise at common law from use and appropriation, and not by virtue of federal registration. 4 Callman, Unfair Competition, Trade Marks and Monopolies (3d ed.) at 341–42.

"The jurisdiction of the State courts in cases involving the infringement of a

---

3. The Ninth Circuit had previously approved a discretionary stay of a Federal declaratory judgment action pending the decision in the state courts of California. Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9 Cir. 1964).

4. That after removal the State of New York would be a party plaintiff in the

District Court would not, in itself, be disturbing. A sovereign State may remain the plaintiff after removal from the State Court, and the pleading may be "reformed". Coosaw Mining Co. v. South Carolina, 144 U.S. 550, 564, 12 S.Ct. 689, 36 L.Ed. 537 (1892); see also Ames v. Kansas, 111 U.S. 449, 4 S. Ct. 437, 28 L.Ed. 482 (1884).

statutory trade-mark and for an injunction and damages in connection therewith, necessarily carries with it the power to pass upon the validity of the registered trade-mark and the scope of its application." Brown & Bigelow v. Remembrance Advertising Products, Inc., 279 App.Div. 410, 412, 110 N.Y.S. 2d 441, 443 (1st Dept. 1952), aff'd, 304 N.Y. 909, 110 N.E.2d 736 (1953). There is, indeed, concurrent jurisdiction in the State Court.

 Since the common law trademark survived the Federal registration under the Lanham Act and since the Attorney General is attacking those common law rights, the respondents may not prevent him from doing so in the State Court. See Cue Publishing Co. v. Colgate Palmolive Co., 233 F.Supp. 443 (S. D.N.Y.1964). Raising their own claims under the Lanham Act *as a matter of defense* will not support removal. Gully v. First National Bank, supra, 299 U.S. at 113, 57 S.Ct. 96, 81 L.Ed. 70. See M & D Simon Co. v. R. H. Macy & Co., 152 F.Supp. 212, 216 (S.D.N.Y.1957).[5] H. Burger Corp. v. Benson Corbee Enterprises, 160 U.S.P.Q. 630 (S.D.N.Y. 1968); Smith v. Jordan Marsh Co., 161 F.Supp. 659, 660 (D.Mass.1958). Federal preemption is, in any event, a matter of defense to a State law claim and not a ground for removal. State of Washington v. American League of Professional Baseball Clubs, 460 F.2d 654, 660 (9 Cir. 1972).

When, as here, the petitioner is the Attorney General of a State the result is eminently desirable because it gives free scope to the police power of the States.

The motion to remand the action to the Supreme Court of the State of New York is granted.

---

5. The implication of La Chemise Lacaste v. The Alligator Co., 165 U.S.P.Q. 766 (D.C.Del.1970) may be to the contrary, for there a State Court complaint sought a declaration that the plaintiff owned a common law trademark, and the case was removed to the District Court which denied a motion to remand. I respectfully follow the holding of Judge Walsh in M & D Simon Co., *supra*.