IDEAL TOY CORPORATION, Plaintiff,

v.

CHINESE ARTS & CRAFTS INC., Huang & Co., Drybranch, Inc., Skor-Mor Products, Inc., Syd-Art Novelty Co., Inc., Golden Kazoo, Kingstone International Corp., Denenberg Associates, Cal Sternberg & Associates, David Oestreich, Inc., Robert S. Koons and Associates, and John N. Hansen Co., Inc., Defendants.

IDEAL TOY CORPORATION, Plaintiff,

v.

HENRY WEDEMEYER, INC.,
Defendant.

Nos. 81 CIV. 3015 (CBM), 81 CIV. 3111 (CBM).

United States District Court,
S. D. New York.

Nov. 24, 1981.

Curtis, Morris & Safford by Lewis H. Eslinger, Pasquale A. Razzano, New York City, for plaintiff.

Simone Song by Simone Song, Robert Fong, Larry Kushner, New York City, for defendants Kingstone Intern. Corp. and Denenberg Associates.

Joseph Winston by Allan Winston, New York City, for Henry Wedemeyer, Inc.

Fish & Neave by Donald E. Degling, Charles P. Kennedy, New York City, for defendants John N. Hansen Co., Inc. and Robert S. Koons and Associates.

## OPINION

MOTLEY, District Judge.

This is an action for alleged common law and statutory trademark infringement and unfair competition. The applicable statutes are Section 43(a) of the Trademark Act of July 5, 1946 (Lanham Act), 15 U.S.C. § 1125(a), and the New York General Business Law, §§ 133, 368–d.

The jurisdiction of the court over the defendants and the subject matter is not contested.

Plaintiff has moved for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, restraining defendants from infringing on its alleged trade dress with regard to a product known as "RUBIK'S CUBE". The court has decided to issue the requested injunction, for the reasons discussed below.

### Standard

To obtain a preliminary injunction in this Circuit, the party seeking relief must show both irreparable injury and either

1) likelihood of success on the merits, or

2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Jackson Dairy, Inc. v. H. P. Hood and Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979); *Selchow & Righter Co. v. McGraw Hill Book Co.,* 580 F.2d 25, 27 (2d Cir. 1978).

### Findings and Conclusions

Plaintiff, Ideal Toy Corporation (Ideal), is a Delaware corporation having a principal place of business at 184–10 Jamaica Avenue, Hollis, New York. Ideal is a large manufacturer and seller of toys, dolls, games and puzzles in the United States and elsewhere.

Defendant John N. Hansen Co., Inc. is a California corporation, having a principal place of business at 369 Adrian Road, Millbrae, California.

Defendant Henry Wedemeyer, Inc. is a corporation of the State of New York having a place of business located at 41 Madison Avenue, New York, New York.

Defendant Kingstone International Corp. is a corporation having a place of business in Los Angeles, California.

Defendant Denenberg Associates is a sales and marketing representative for Kingstone International Corp., and is located in Holiston, Mass.

Defendant Robert S. Koons and Associates is a corporation having a place of business at 332 W. Jackson Road, Webster Groves, Mo.

Plaintiffs and all defendants are now engaged in selling in the United States a puzzle made up of 27 colored cubes.

The cube which Ideal sells was invented by a teacher in Hungary, Erno Rubik, in about 1975. Ideal now has, by agreement, an exclusive arrangement with the inventor to sell the puzzle in the United States.[1] Ideal calls its product RUBIK'S CUBE and has applied to register as its trademark the name RUBIK'S CUBE.

Each RUBIK'S CUBE is a solid cube approximately 2″ x 2″ x 2″. Each of the six sides of RUBIK'S CUBE consists of nine smaller cubes, stacked three cubes high and three cubes across. Each of the three levels on a side can be rotated on an axis. Brightly colored adhesive squares of six different colors are applied to the outer faces of each of the 27 smaller cubes.

When originally purchased each of the six sides consisting of nine smaller cubes is of the same color. The colors used on the sides of plaintiff's RUBIK'S CUBE are white, red, blue, green, yellow, and orange. Each color is rich and distinctive. Since a particular color is placed on the black plastic of which each smaller cube is made, the rich black border thus formed for each cube gives the entire cube a striking appearance.

The game is to manipulate each level of the cube so as to mix up the colors, and then try to reassemble the cube into the original one-color-per-side position. It is, of course, easy to mix up the colors. It apparently requires "genius" to reassemble the cubes to their original start position.

The original packaging of the Ideal cube was a clear, cylindrical tube approximately three or four inches high and three inches in diameter which is placed on a black plastic base upon which the cube rests. The cylindrical tube is attached to the base by a black adhesive strip on which appear the words "RUBIK'S CUBE". Inside the package appears the cube in the start and finish position with each of the sides containing one solid color.

Ideal claims that the colors, start position, and packaging are its trade dress. Defendants claim that these features are in the public domain as functional aspects of the product.

The evidence on the preliminary injunction hearing disclosed that defendants are all marketing cubes which have an appearance strikingly similar to plaintiff's, although some defendants also market other variations of the cube's colors, shape and size. The court's determination of the appearance of the Hansen cubes comes from viewing the exhibits before it. As to the other defendants, the only evidence before the court was the testimony of Mr. Joseph Aglione, a private detective hired by plaintiff's counsel. Mr. Aglione testified that he went to the New York trade show or (in the case of defendant Wedemeyer) to defendant's place of business and ordered or saw a defendant's cube similar to plaintiff's cube displayed for sale. The court finds Mr. Aglione to be a credible witness. None of the defendants offered testimony with regard to the cubes which were not before the court. Thus, with the exception of defendant Hansen there was no testimony or other evidence offered to contradict that of Mr. Aglione.

The court finds that the accused cubes marketed by each of the defendants are confusingly similar to that of Ideal. Each defendant's cube uses substantially the same colors and the same start position.

1. Although the agreement itself was not introduced in court, the attorney for defendants Hansen and Koons conceded that Ideal had an exclusive agreement permitting it to sell the cubes in the United States. (Tr. p. 172, 180).

The packaging of defendant Hansen's cube was originally also confusingly similar, if not identical, to plaintiff's packaging (with the exception of the name on the cylindrical tube base.). The minor differences such as color shading in some of the Hansen cubes that plaintiff contends infringe its trade dress are such as would not readily be discerned by the average consumer, especially when the cubes are seen at a distance, as in a store window or display.

Defendants claim that plaintiff had functional reasons for adopting the trade dress that it did. They point to advantages of solid colors over, for example, pictures of fruit on the sides of the cube, and that a clear, cylindrical container is an advantageous way to display the product to consumers. Even granting that these features have functional benefits, however is not to say that there are not an infinite number of other functional ways to package or display the product, or to dress the cube.

A square package or a triangular package, or any number of other shapes, sizes, and degrees of transparency could be used to advantage to display much of the cube.

The same applies to the cube itself. A wide variety of possible patterns on each cube, other than solid colors, as well as a wide variety of colors, shapes and sizes could have been used by defendants in their products. This is amply demonstrated by the great variety of cubes presented to this court—a variety which, in the court's view, does not begin to approach the limits of imagination or industry.

■ The great similarity to RUBIK'S CUBE of the cubes used by each of the defendants and the great similarity to plaintiff's packaging of the packaging used by defendant Hansen, and the entire image presented to the consumer by the combination of the appearance of the cube in its package where this was demonstrated to the court, strongly indicates that defendants' products and packaging were intentionally made similar to plaintiff's to capitalize on the appearance of plaintiff's product. One need only look at the cubes sold by each of the defendants, or listen to the testimony of Mr. Aglione, to understand the almost inevitable confusion that would be created in the mind of an average consumer confronted with defendants' products.

■ To say that there are functional reasons for the colors adopted by plaintiff (simplicity, attractiveness), is not to rule out the possibility that those colors could have acquired secondary meaning under the Lanham Act. *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631 (2d Cir. 1979). Where there are a great number of available colors, shades of colors, and color combinations, plaintiff's distinct color combination must be considered non-functional. The court does not find persuasive defendant Hansen's contention that there are limited colors available.

Since the court finds the use of solid colors to be non-functional, the use of the solid color scheme as the starting position for the puzzle is equally non-functional. Thus, had polka dots been used to dress the cube, the starting position would consist of the appropriate pattern of dots on each side of the cube rather than a solid color starting position.

As to the packaging, the court finds that this, if anything, is even more non-functional. In fact, when plaintiff wanted to compete on a price basis with its various competitors, it found a type of packaging other than the one allegedly infringed by defendants to be far more economical—for this purpose at least, far more functional. Plaintiff now retains its original packaging for its more expensive "Deluxe" model. The court finds that while the trade dress may have had some functional advantages, it had some functional disadvantages as well. Its use was, in essence, arbitrary. In addition, the fact that plaintiff found that its cylinder shaped package was easy to ship does not at all mean that there are not a great number of other trade dresses which were equally functional. For example, a clear, square container would have served many of the functional advantages of shipping, although it would not necessarily have helped make defendants' products resemble

plaintiff's. Plaintiff's packaging was, then, also arbitrary and capricious. In short, it is the view of this court that plaintiff's RUBIK'S CUBE is readily identifiable by non-functional elements.

█ To succeed on the merits of either its Lanham Act or its New York unfair competition claim, plaintiff must show that there is a likelihood of confusion between its trade dress and that of the second comers. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir. 1980).

█ Under New York law, even if plaintiff does not show secondary meaning, it is sufficient to sustain the issuance of an injunction that plaintiff show that the trade dress of a second comer is confusingly similar to its own. *Id.* "New York law imposes on the second comer 'a duty to do [sic] so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer.' To warrant protection the first comer's design 'need merely be distinctive enough to become recognized as [a mark of quality].'" *Commerce Foods, Inc. v. PLC Commerce Corp.*, 504 F.Supp. 190 (S.D.N.Y.1980) (citations omitted). The instant case presents the court with five separate second comers, each of which sells a product likely to be confused with that of plaintiff, and none of which dressed its product according to the dictates of *Perfect Fit*, cited above. Plaintiff's product, on the other hand, is distinctive, as recognized by the many requests plaintiff has received to use its product or its design.

New York law on trade dress was summed up by the Second Circuit as follows:

[M]onopolization is not a problem in the realm of trade dress, because the possible varieties of advertising display and packaging are virtually endless. Thus, in this area New York law has concerned itself principally with whether or not the public is likely to be confused, rather than with whether the first comer's trade dress has acquired secondary meaning.

*Perfect Fit Industries, Inc. v. Acme Quilting Co., supra*, 618 F.2d at 953. The court has already referred to the almost inevitable confusion on the part of consumers who would be confronted with the products of each of the defendants previously named in the instant opinion. This applies equally to the New York law and Lanham Act claims.

█ The court concludes that plaintiff has shown a likelihood of success on the merits of its claim that defendants' products are confusingly similar to plaintiff's product.

The court will now consider the issue of secondary meaning under the Lanham Act. The Court of Appeals in *Perfect Fit Industries, Inc. v. Acme Quilting Co., supra*, 618 F.2d at 952–53, wrote as follows:

Secondary meaning was originally a trademark concept designed to limit the extent to which a manufacturer could monopolize words and symbols that are useful in describing products. The doctrine holds that a descriptive or geographical mark receives protection against copying only if consumers have come to associate it with a particular manufacturer or source. When...the mark has thus acquired secondary meaning, a second comer is barred from using it because [confusion is certain to result in the public's mind].

█ Whether plaintiff's trade dress acquired a secondary meaning under this act may be determined by factors such as plaintiff's advertising and sales record, a survey of consumer recognition, and conscious imitation of plaintiff's product. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir. 1979); *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 503 F.Supp. 647, 650 (S.D.N.Y.1980), *aff'd* 210 USPQ 1 (2d Cir. 1981).

Using these criteria, the court finds plaintiff's advertising and sales figures to be considerable. Plaintiff spent over $1,000,-000.00 on advertising in 1980 alone. Most of that advertising displayed the cube and its then unique color scheme unhindered by any packaging. In addition, plaintiff has sold well over 5,000,000 of these items in a relatively short period of time.

Plaintiff has put forth a consumer survey which tends to indicate a high recognition factor for its cube. "While the results of any [research] survey . . . are open to—even invite—challenge by way of competing experts and rival studies, courts have found such studies to be useful tools in assessing 'secondary meaning.'" *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 502 F.Supp. 647, 650–51 (S.D.N.Y.1980), *aff'd* 210 U.S.P.Q. 1 (2d Cir. 1981). In the instant case, the court finds that although plaintiff's survey is not the final word on secondary meaning, it is persuasive evidence in support of plaintiff's contention that its trade dress has acquired secondary meaning.

■ Finally, the number of imitators and the accuracy of the copying of plaintiff's trade dress is also persuasive evidence that the trade dress has acquired secondary meaning. There has been testimony and evidence regarding the appearance of cubes of each of the defendants, and a sample of defendant Hansen's cube has been put before the court. These indicate to the court an accuracy that implies very strongly intentional copying.

The court finds, assessing the factors in the above paragraph, that plaintiff would be likely to succeed on the merits in its attempt to prove secondary meaning.

Taking all of the factors together, plaintiff has established a likelihood of success in proving that defendants have intentionally copied its trade dress and that defendants' products are of such appearance as to cause substantial confusion among consumers. Ideal has established a likelihood of success in proving that its trade dress is non-functional and has acquired secondary meaning. In short, Ideal has shown a likelihood of success on its claims under the Lanham Act and under New York unfair competition law. The court need not reach plaintiff's New York statutory law claim at this time.

■ In accordance with the discussion above, the court is of the opinion that, even had plaintiff not shown likelihood of success on the merits, it has certainly shown that it has a fair ground for litigation. The balance of hardships, in this court's view, tips decidedly in plaintiff's favor, as well. Plaintiff clearly has the most at stake in this litigation. Of the parties involved, it was the first to market the cube puzzle at issue. It has the exclusive arrangement with the owner of the patent in Hungary. It has been the primary marketer and advertiser of the puzzles that stem from the Rubik invention. It markets, as far as this court can discern, only one type of the puzzle: one set of colors two types of distinct packaging. Some of the defendants, on the other hand, show a wider variety of cubes available to them. In addition, defendants are relative newcomers in the market and, in the view of this court, would not suffer the hardships from an injunction that would attend the plaintiff if the injunction is denied.

Therefore, using this alternative test, the court is again of the view that the injunction should be granted.

To get a preliminary injunction, plaintiff must also show that it would suffer irreparable harm in the absence of such an injunction.

Due to the difficulty of measuring the value of goodwill represented by plaintiff's trade dress for its cube, irreparable injury will be found where there is a high probability of confusion. *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir. 1972). Confusion itself results in loss of goodwill because consumers would likely mistake defendants' potentially inferior goods for those of plaintiff.

The court notes that "the owner's reputation and goodwill are placed in jeopardy due to his inability to exercise any control over the nature and quality of goods being sold or advertised. In addition it is usually difficult, if not impossible . . . to muster sufficient proof of the precise measure of its damages." *Miller Brewing Co. v. Carling O'Keefe Breweries Of Canada, Ltd.*, 452 F.Supp. 429, 437–38 (W.D.N.Y.1978). Thus, money damages would be difficult to calcu-

late or prove in the instant case. *See Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd., supra,* 452 F.Supp. at 438. As plaintiff has shown a high probability of confusion, the irreparable harm requirement is satisfied, and an injunction is proper.