**SCAN–PLAST INDUSTRIES, INC., and Sparring/Elfa AB, Plaintiffs,**

**v.**

**SCANIMPORT AMERICA INC., Aksjeselskaspet Elas, and Ima AB, Defendants.**

No. 86–CV–1444.

United States District Court, E.D. New York.

Report and Recommendation Dec. 1, 1986.

Decided Jan. 23, 1987.

James M. Latimer, Austrian, Lance & Stewart, New York City, for plaintiffs.

Robert M. Cohen, Simonson & Cohen, P.C., Staten Island, N.Y., for defendants.

## ORDER

McLAUGHLIN, District Judge.

The annexed Report and Recommendation of United States Magistrate Carol Bagley Amon is hereby adopted as the Opinion of this Court. No objections were filed.

Accordingly, the motion to dismiss of defendant Scanimport America is denied.

SO ORDERED.

## REPORT AND RECOMMENDATION

CAROL BAGLEY AMON, United States Magistrate.

Plaintiffs Scan-Plast and Sparring/Elfa filed suit against defendants Scanimport, Aksjeselskaspet Elas and Ima AB seeking damages and injunctive relief for alleged violations of 15 U.S.C. § 1125(a) (the Lanham Act § 43(a)), § 349(a), New York General Business Law, the New York State Unfair Competition Law, 18 U.S.C. § 1961, et seq., the Racketeer Influenced and Corrupt Organizations Act (RICO); § 350, New York General Business Law and § 33.09(8), New York Arts and Cultural Affairs Law.

The defendant Scanimport has moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure or in the alternative for summary judgment pursuant to Rule 56. This case was referred to me by the Honorable Joseph M. McLaughlin for a Report and Recommendation on the motions. For the reasons set forth herein, the undersigned recommends that these motions be denied.

## STATEMENT OF THE CASE

### A. *The Complaint*

According to the complaint, for the past twenty-five years plaintiff Sparring/Elfa has engaged in the manufacture of Elfa Wire Storage Systems and Elfa modules (Elfa products) which have been imported into the United States and distributed by plaintiff Scan-Plast under the trade name "Elfa". (¶¶ 9, 10). The Elfa wire storage systems are described as being composed of "interconnecting modules, such as frames, drawers and shelves of standardized sizes that may be assembled to form integrated units." (¶ 11). It is alleged that in the past five years approximately $1,500,000 has been spent in the United

States in promotion and advertising of Elfa, and that as of 1985, the Elfa products held a predominate position in sales in the United States and were widely recognized as the leading high quality wire storage system. (¶¶ 12; 14).

Plaintiffs claim that Elfa's American customers commonly replace or add to their systems by seeking to purchase additional Elfa products which either interconnect with or match their present systems. (¶ 13).

The complaint further alleges that in late 1985 the defendants, who had not previously imported or sold any significant numbers of wire storage systems or modules in the United States, began the importation, distribution and sale in the United States of such systems and modules under the name "Norscan" in competition with the plaintiffs. (¶¶ 15–18). In so doing, it is alleged that the defendants used "false designations of origin, false descriptions and false representations" within the meaning of § 43(a) of the Lanham Act. (15 U.S.C. § 1125(a)). More specifically, plaintiffs allege that the defendants simulated and imitated the non-functional elements, trade dress and sales literature of the Elfa products, intentionally causing a likelihood of confusion among purchasers as to the source of the wire storage systems. (¶ 20). Defendants are said to have copied Elfa's exact product dimensions, overall appearance, accessories, sales literature, brochures, product designations, color coding, number coding[1], claim of originality, and emphasis on Scandinavian origin. (¶ 20). Plaintiffs further claim that defendants' wire storage systems are sold in the same outlets which have long carried and contin-

ued to carry Elfa products. The complaint alleges that samples of Elfa products and sales literature are on display in the stores, and that when customers ask for Elfa they are instead provided with the Norscan products. The stores have an economic incentive to engage in this deceit, the plaintiffs maintain, because they can purchase the Norscan wire storage systems at wholesale more cheaply than the Elfa products and sell them at the same retail price. (¶ 20(J)).

The complaint states that the defendants have taken no measures to avoid consumer confusion, such as stating they are not affiliated with Elfa, or specifically identifying their products as copies of, replacements for, or as being compatible with the Elfa products. (¶ 20(K)).

The remaining causes of action under New York law for deceptive acts and practices (Second Claim), unfair competition (Third Claim), false advertising (Fifth Claim), and false representations of origin (Sixth Claim), are all predicated on the same factual allegations.

Plaintiffs'. fourth claim for relief, the RICO claim, relies on these allegations and alleges a scheme to defraud whereby the public, intending to purchase Elfa products, is wrongfully induced to purchase defendants' copies. (¶¶ 31, 32). According to the complaint, the mailings pursuant to this scheme constitute a "pattern of racketeering activity". (¶ 35). The complaint further asserts that the defendants constitute an enterprise whose activities affect interstate commerce (¶¶ 36, 37) and that they conducted the affairs of the enterprise through a pattern of racketeering activity.

---

1. The complaint alleges that both defendants and plaintiffs identify their frames, drawers and shelves of various sizes with numbers. Both parties use twenty-eight different numbers to identify their frames. Plaintiffs use a five-digit number ending in "0". Plaintiffs allege that defendants put an "NS" in front of their number and then copied in sequence the first four numbers used by the plaintiffs, e.g., plaintiffs' number reads: 73040, and defendants' number reads: NS 7304. With respect to the drawers and shelves, plaintiffs use five-digit numbers ending in 27. Defendants prefix their numbers with "NS" and then use in sequence the first three out of five digits used by the plaintiffs, e.g., plaintiffs: 03027, and defendants: NS030. Defendants have the same number of available sized drawers and shelves as plaintiffs. Plaintiffs' color coding consists of separating their frames, drawers, and shelves by widths; each width measurement is printed against a vertical band of color. Defendants, in their sales literature, separate their drawers, frames and shelves by the same width and use the same colored vertical stripes in the same sequence as plaintiffs.

(¶ 40). Plaintiffs plead injury to their business as a result of the defendants' activities. (¶ 42).

### B. *Scanimport's Contentions*

The defendant Scanimport moves for dismissal of the complaint and for summary judgment contending that plaintiffs' allegations fail to make out a claim under any of the federal statutes cited, and that the court lacks jurisdiction to consider the state claims since they are pendent to the insufficient federal claims.

In support of its motion, defendant offered the affidavit of Charles Costa, the chief officer and stockholder of Scanimport. Mr. Costa stated that the plaintiffs do not allege any patents, copyrights or registered trademarks in the Elfa wire basket storage system. He asserts that an unpatented article which has been marketed for twenty five years is in the public domain and can be copied. Appended to Costa's affidavit are photocopies of pages of brochures of other companies that deal in wire storage systems, submitted as evidence that neither party in this action possesses exclusive rights to manufacture, sell and distribute wire storage systems. (Affidavits, p. 7).

Scanimport maintains that there is no false designation of origin since its brochure bears the name "Norscan" in bold white letters on the cover, and since its system is in fact manufactured in Norway as set forth in its brochure. (Affidavit pp. 3–4).

Scanimport challenges the assertion that its system is confusingly similar to plaintiffs', noting that its product is shipped in containers and packages clearly labelled "Norscan". (Affidavit, p. 5). Scanimport asserts that the fact that the products appear identical is not actionable in the absence of mislabelling, confusingly similar names or copied packaging. (Affidavit, p. 6).

Scanimport claims plaintiffs' RICO allegation is defective since it is predicated upon legally permissible activities. (Affidavit, p. 6). There can be no mail fraud,

Scanimport maintains, where it had "a perfect right to sell, distribute, supply and furnish the items in question". (Affidavit, p. 5).

### DISCUSSION

Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) or in the alternative for summary judgment on the merits under Rule 56. Since defendant has submitted matters outside the pleadings, i.e., the Costa affidavit and accompanying brochures, this motion will be treated as one for summary judgment and analyzed in accordance with the appropriate standards governing such motions. See, Rule 12(b)(6); *Grand Union Co. v. Cord Meyer Development Corp.*, 735 F.2d 714, 716–717 (2d Cir.1984).

The standards for summary judgment are well established. The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The record must be read in the light most favorable to the non-moving party; all reasonable inferences must be drawn against the moving party. *Burtnieks v. City of New York,* 716 F.2d 982, 985–986 (2d Cir. 1983). If the party opposing summary judgment generates uncertainty as to the true state of any material fact, this relief should not be granted. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). A genuine issue of material facts exists if there is a factual issue in dispute which might affect the outcome of the litigation, and there is sufficient evidence on both sides of the issue that it could reasonably be resolved in favor of either party. *Anderson, et al. v. Liberty Lobby, Inc., et al.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus the pertinent inquiry to determine Scanimport's summary judgment motion is whether, viewing the facts in a light most favorable to the plaintiffs, the defendant has foreclosed every genuine issue of material fact raised by the plaintiffs and is therefore entitled to judgment as a matter of law.

*See, Adickes v. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970).

### 1. *The Lanham Act Claim*

■ Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) [2] establishes a federal law of unfair competition by providing a private cause of action to a party injured by a competitor's false designation, description or representation of origin of its product. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985). To bring an action under the Lanham Act, a party need not have been injured by the misappropriation of a federal trademark or the infringement of a patent. *Ibid.* The Lanham Act extends protection beyond registered trademarks to combinations of words, symbols, designs, packaging, advertising materials, and techniques which are so associated with a product that they have become a means through which the consumer identifies the product with its producer. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1059 (2d Cir.1979); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203 (2d Cir.1979); *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 595 F.Supp. 702, 705 (S.D.N.Y.1984). Cases brought under Section 43(a) speak in terms of extending protection to the "trade dress" of a product. As the Second Circuit stated in *LeSportsac:*

> The 'trade dress' of a product, which 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics' may become an unregistered trademark eligible for protection under § 43(a) if it is nonfunctional and has acquired a secondary meaning in the mar-

ketplace by which it is identified with its producer or source.

754 F.2d at 75, quoting *John H. Harland Co. v. Clarke Checks Inc.*, 711 F.2d 966, 980 (11th Cir.1983). Where a product feature thus symbolizes the product, it is said to have acquired a "secondary meaning" synonymous with that product. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d at 1059. Imitation of a product feature which has acquired secondary meaning is a violation of the Lanham Act if the appropriation or imitation tends to confuse consumers about the origin of the product. *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 91 (2d Cir.1984).

■ Thus, to prevail on a claim brought under § 43(a) of the Lanham Act, a plaintiff must show: (1) that a product feature adopted by the defendant is identical or similar to a product feature used by the plaintiff; (2) that this feature has a secondary meaning which identifies it in the mind of the consumer with the plaintiff's product; (3) that the defendant's use of this feature tends to create confusion among consumers about the origin of the defendant's product. *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d at 92; *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 595 F.Supp. at 705. Proof that the disputed features are "functional" is a defense to a § 43(a) claim. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d at 76.

■ Fairly read, plaintiffs' first cause of action states a claim under § 43(a) for the purposes of overcoming a Rule 12(b)(6) motion. Plaintiffs allege that Elfa is the leading manufacturer and distributor of high quality wire storage systems, that they manufactured and distributed these sys-

---

**2.** Section 43(a), 15 U.S.C. ¶ 1125(a), provides: any person who shall affix, apply or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce to deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

tems in the United States before the defendants, that they have spent substantial sums of money advertising their product, that defendants have knowingly and intentionally copied their product, trade dress and sales literature, and that defendants have caused a likelihood of confusion as to the source of their product.

Plaintiffs do not define what constitutes "trade dress" as that term is used in their complaint. This court construes the complaint, however, as alleging an unregistered trademark in a combination of the design of the product itself and its accompanying sales brochures including buyers' guides, and price lists. As defendant points out, plaintiffs do not assert, as is typically the case in a Lanham Act claim, that defendant has copied their product packaging except to the extent that accompanying sales materials can be considered a form of packaging.

Defendant contends that the plaintiffs have no trademark protection in the copied elements of the wire basket system since these features are entirely functional. It further maintains that the design features of plaintiffs' wire basket storage system have not acquired secondary meaning since this same system is currently being marketed and sold by six other domestic manufacturers. Defendant further argues that, assuming plaintiffs' brochures constitute the trade dress of their products, defendant's brochures are so markedly different from plaintiffs' that they could not be confusing. In short, defendant contends that since the plaintiffs have no patent rights in their wire basket storage system, and make no cognizable claim of trade dress infringement, defendant cannot be foreclosed from copying Elfa's wire basket storage system, and thus summary judgment is appropriate.

■ Although this court recognizes that the defendant raises serious questions as to the ultimate merits of plaintiffs' lawsuit, this court finds that the defendant has not met its burden of showing that there are no genuine issues of material fact at least insofar as plaintiffs' having protectible trade dress rights in their brochures.

*Functionality*

Plaintiffs contend that defendants have produced an exact replica of their wire storage systems. The dimensions are identical and the accessories, i.e. casters, spring clips, crossbars, wood tops and separate runners, appear identical. Indeed, the fact that Elfa systems and the Norscan counterparts are indistinguishable is not disputed. Defendant contends, however, that the allegedly copied design features are not protected under § 43(a) of the Lanham Act since they are obviously functional.

■ A functional feature has been defined as one that "is essential to the use or purpose of the article or affects the cost or quality of the article". *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2186 n. 10, 72 L.Ed.2d 606 (1982). Whether a feature of a product is functional is a question of fact and the burden of proof on this issue rests with the defendant. *LeSportsac Inc. v. K Mart Corp.*, 754 F.2d at 75–76 (2d Cir.1981). In this case, this Court cannot find that there is any genuine factual question as to the functionality of the dimensions and accessories of the wire basket systems. These are not arbitrary embellishments but elements of the system essential to its use and purpose and therefore are functional. In and of themselves, they do not appear to serve the trademark purpose of identification. *See, Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 303 (2d Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982) (belt's material, fasteners, graduated sizes, reversibility and stitching held functional and subject to copying); *La Fratelli v. Charles Craig, Ltd.*, 725 F.2d 18, 20 (2d Cir.1984) (overall design of sofa held to be functional where there was no arbitrary embellishment or label).

■ On the other hand it is equally apparent that there is a genuine issue of fact as to whether copied features of plaintiffs' brochures, e.g., the color coding and num-

bering systems, are non-functional. Indeed the defendant does not argue that these features are essential to the use of the product or impact upon the quality or cost of the product. In this case, there is arguably no functional aspect to the particular colors used by the plaintiffs or to the numbers selected to identify their components. There is an infinite number of other combinations defendants could have used. *See, Ideal Toy Corp. v. Chinese Arts & Crafts,* 530 F.Supp. 375, 378 (S.D.N.Y.1981). The rationale behind the functionality defense is the encouragement of competition by preventing the monopolization of purely functional designs. *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d at 77. Scanimport's ability to compete would not be hindered by extending protection to these features.

### Secondary Meaning

In *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950, 953 (2d Cir. 1980), the Second Circuit explained the rationale behind the doctrine of secondary meaning, and the particular manner in which secondary meaning attaches to a product:

> ... a descriptive or geographical mark receives protection against copying only if consumers have come to associate it with a particular manufacturer or source. When this association is established and the mark has thus acquired secondary meaning, a second comer is barred from using it because such use is virtually certain to create confusion in the public mind as to the source of the product. (citation omitted)

██ Whether a product feature has acquired secondary meaning has always been treated as a question of fact. *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d at 78; *Metro Kane Imports, Ltd. v. Rowoco, Inc.,* 595 F.Supp. at 706–7; *Ideal Toy Corp. v. Chinese Arts & Crafts,* 530 F.Supp. at 379; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d at 203–4; *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d at 1059. Among the factors to be considered in de-

termining whether secondary meaning has attached are the distinctiveness of the features, the number of imitations, the accuracy of the copying of the features, and the existence of marketing evidence that tends to show that consumers identify the allegedly copied features with the plaintiff's product. *Ideal Toy Corp. v. Chinese Arts & Crafts,* 530 F.Supp. at 379, 380. Conscious imitation of features of a plaintiff's product supports an inference that the plaintiff has succeeded in creating good will for those product features and that by copying them, defendant has sought to appropriate some of this good will. *Id.* at 380; *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d at 1060, 1061. *Socony-Vacuum Oil Co. v. Rosen,* 108 F.2d 632, 636 (6th Cir.1940).

In *LeSportsac,* the combination of a hollow rectangular zipper pull, cotton carpet tape and a repeating logo on a nylon bag gave the bag a distinctive look to which secondary meaning attached. Similarly in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d at 204, the combination of white boots, white shorts, a blue blouse and a white star-studded vest was found to be an arbitrary design for a cheerleader's costume to which secondary meaning attached. Other features held to have acquired secondary meaning include the color choice, display arrangement and packaging of a toy called a Rubik's Cube, and the arrangement of lettering, colors and shapes on the label of a fruit juice can. *See, Ideal Toy Corp. v. Chinese Arts & Crafts, Inc.,* 530 F.Supp. at 375; and *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058.

The complaint alleges that customers use the Elfa sales literature in connection with their purchases (§ 20(J)). This would presumably include the use of these brochures not only in connection with initial purchases but also in subsequent purchases made by satisfied Elfa customers for replacement parts or additions to existing systems.

██ At this stage of the litigation, there appears to be a genuine issue of fact

on the question of secondary meaning. Nothing presented by the defendant has foreclosed the plaintiffs from showing that, in view of their alleged position as the leading manufacturer and distributor of wire storage systems in the United States for the past twenty-five years, coupled with the large sums expended on advertising, that either the combination of the wire basket systems themselves with the numbering and color coding of the components in the brochures, or the latter alone, constitutes a feature or mark that consumers identify with Elfa. Indeed, the claim that the defendants have consciously imitated plaintiffs' numbering system and copied the color coding, (those portions of the brochures essential to the ordering and reordering of component parts of the system) may support an inference of secondary meaning. As stated before, the consideration on a summary judgment motion is not whether the plaintiffs will prevail or even if they are likely to prevail, but whether a material factual issue exists.

### Likelihood of Confusion

■ Scanimport contends that the plaintiffs cannot show that there is a likelihood of confusion as to the origin of defendant's product since the name "Norscan" appears both on the boxes the wire basket products are shipped in and in large white letters on the brochures that are alleged to be confusingly similar. Defendant further argues that the overall content of the brochures is so dissimilar that there could be no real likelihood of confusion. *In American International Group Inc. v. London American International Corporation Limited,* 664 F.2d 348, 351 (2d Cir.1981), the Second Circuit stated: "[W]hether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties." Among the various factors appropriately considered on this issue are the similarities of the trade dress and the product itself, the competitive proximity of the two products, the buying habits of their probable users, and instances of actual confusion. *RJR*

*Foods, Inc. v. White Rock Corp.,* 603 F.2d at 1061.

■ When these factors are considered in this case, it becomes apparent that there is a genuine issue of fact as to whether or not there is a likelihood that consumers using Norscan brochures and purchasing Norscan wire baskets believe they are purchasing the Elfa systems.

As previously stated the baskets themselves are identical. The complaint alleges that the Norscan wire basket systems are sold in the same stores that sell and display the Elfa products, and that in fact store owners have been able to pass off the Norscan products for the Elfa products.

The "trade dress"—in this case the brochures—is similar. Although, as defendant points out, its brochures bear the Norscan name and are not identical page for page to the Elfa brochures, there are nonetheless key similarities in the important parts of the brochures, e.g., those sections consumers refer to in selecting and reordering products. The fact that the defendant's trade name "Norscan" appears on the brochures is not necessarily dispositive of a claim that there is a likelihood of confusion as to the origin of defendant's product. *See, RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d at 1060 (defendant's own trade name appeared on can yet the design and colors on can so similar to plaintiff's product that claim for trade dress infringement upheld); *See also Chevron Chemical Co. v. Voluntary Purchasing Groups,* 659 F.2d 695, 704 (5th Cir.1981) (in which the defendant's insect spray can, while bearing its own name in bold letters, clearly copied plaintiff's product and the "similarity in the overall trade dress of the products" led to a likelihood of confusion).

As the Court in *RJR Foods* stated:

The test of customer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression (citations omitted). If the similarities in appearance are such that they would be

unduly confusing to the average consumer, the defendant has trespassed upon plaintiffs' rights (citations omitted).

603 F.2d at 1060.

Another source of confusion arguably lies in defendant's statement in its brochure that it is the "original wire basket storage system from Norway in Scandinavia". Plaintiffs do not contend that defendant's product is not manufactured in Norway and for that reason bears a false designation of origin, but rather that this phrase seeks to engender further confusion as to whether Elfa sponsors the Norscan systems. Plaintiffs claim that they manufactured the original wire basket systems and that they import these systems from Sweden. Part of the image of their system then is its Scandinavian origin which they claim defendants seek to trade on in using this phrase. One may legitimately wonder why defendants saw fit to explain where Norway is unless they believed that emphasis on the Scandinavian origin was significant in marketing these goods. Thus plaintiffs have some logical basis to argue that this terminology is not used by defendants as a geography lesson for its consumers, but to deceive customers into believing that they are purchasing the Elfa systems.

In short, there appears to be a genuine issue of fact on the likelihood of confusion, a material element of the case.

### 2. The RICO Claim

Defendant further argues that plaintiffs' RICO claim cannot stand since it is premised upon proof of plaintiffs' unfair competition claims which defendant argues cannot be proven and should be dismissed.

As set forth above, it cannot be said at this stage that plaintiffs' unfair competition claim cannot be proven.

Since plaintiffs plead the elements of a RICO claim and defendant Scanimport makes no other argument directed to the sufficiency of this cause of action, this court does not believe dismissal or summary judgment as to this cause of action is appropriate.

### 3. Pendent State Claims

Defendant attacks plaintiffs' pendent state claims on the presumption that since all federal claims are infirm, pendent claims should be dismissed as having no independent jurisdictional basis. Defendant additionally argues that plaintiffs' state claims are preempted by federal law.

As set forth herein, Scanimport has not demonstrated that plaintiffs' federal claims should be dismissed, thus there is no basis to dismiss the state claims for lack of jurisdiction since they are properly pendent to the federal claims.

Although, Congress has preempted state remedies in the areas of patent and copyright, it has not done so in the area of trademark and unfair competition. *Hamilton v. Hertz Corp.*, 607 F.Supp. 1371, 1374 (S.D.N.Y.1985); *International Order of Job's Daughters v. Lindeburg and Co.*, 633 F.2d 912, 915–916 (9th Cir.1980); *La Chemise LaCoste v. Alligator Co., Inc.*, 506 F.2d 339, 346 (3rd Cir.1974); *Application of State of New York*, 362 F.Supp. 922, 927 (S.D.N.Y.1973).

Defendant's reliance on the decisions in *Sears Roebuck & Co. v. Stiffel*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964) as preempting the state claims in this case is misplaced. As the Second Circuit observed:

> In *Sears-Compco* the Court held merely that a state may not, through its law banning unfair competition, undermine the federal patent laws by prohibiting the copying of an article that is protected by neither a federal patent nor a federal copyright ... This consideration does not apply in a trademark infringement action.

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d at 204.

Since two of the state claims at issue here are for trademark offenses (claims three and six), they would not be preempted. The remaining two claims for false advertising and deceptive business

practices would likewise not fall within the *Sears-Compco* line of cases.

### Conclusion

The Court recommends that defendant's motion for dismissal of the complaint or in the alternative for summary judgment should be denied.

Any objections to the Report and Recommendation should be made to Judge McLaughlin with a copy to the undersigned by December 9, 1986.