## INDUSTRIA ARREDAMENTI FRATEL-LI SAPORITI, Plaintiff-Appellee,

v.

## CHARLES CRAIG, LTD., Defendant-Appellant.

### No. 336, Docket 83–7486.

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1983.

Decided Jan. 4, 1984.

Frank J. Colucci, New York City (Eric D. Offner, Angelo Notaro and Robert S. Weisbein, Offner & Kuhn, New York City, on brief), for plaintiff-appellee.

Herbert T. Posner, New York City (Difalco, Amhurst, Smithson, Tannenbaum & Duval, New York City, on brief), for defendant-appellant.

Before KAUFMAN and VAN GRAAF-EILAND, Circuit Judges, and HAYNSWORTH *, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

Claiming its rather distinctive design of a sofa as an unregistered trademark, an Italian furniture manufacturer sought injunctive relief prohibiting an American manufacturer from marketing sofas of a substantially similar design. The district court granted limited injunctive relief, and the American manufacturer has appealed.

Since we conclude that the design of the sofa was functional, we necessarily conclude that there was no violation of § 43(a) of the Lanham Act and that the award of any equitable relief was inappropriate.

I.

In 1971, plaintiff, Industria Arredamenti Fratelli Saporiti, began marketing in the United States sofas of a unique design. They are modular in construction, so that a purchaser may obtain a sofa with as few as two modules or as many as six or more.

---

* Honorable Clement F. Haynsworth, Jr., Senior United States Circuit Judge for the Fourth Circuit, sitting by designation.

The uniqueness of the sofa's design, however, lies in the construction of the back pillows. At the top, each pillow overhangs the top of adjacent modules and is attached to a molded bolster or tongue which fits into a U-shaped slot between adjacent modules. Placed in the slot, the tongue holds the cushions in place. Viewed from the front, the sofa appears to be equipped with loose, free back pillows, but the tongues prevent their becoming disarranged. The pillows span and conceal the back seams between the modules; one sees in the back portion of the sofa only the pillows and the lines where adjacent back pillows touch. The sofa front is, therefore, aesthetically pleasing, with a soft appearance unusual for a sofa with back pillows firmly affixed to the frame. Viewed from the back, one sees the molded tongues in their slots, but with everything upholstered, the rear of the sofa appears to be part of an attractive contemporary design. Thus, the sofa may be placed in the middle of a room, for there is no need to keep its rear out of sight.

In October 1981, the defendant, Charles Craig, Ltd., began offering for sale sofas which were virtually identical to Saporiti's. There were minor differences—the back of the Craig sofa is some two inches higher than the Saporiti sofa—but, as the district judge observed, the differences would hardly be noticeable except upon a comparison of the two sofas side by side.

## II.

The district court combined a hearing on a motion for a temporary injunction with a hearing on the merits. After a two-day trial, the district court concluded that the design of the Craig sofa was a false indication of its origin within the meaning of the prohibition of § 43(a) of the Lanham Act. It recognized that the office of the tongue inserted into the slot was functional, but it regarded its functionality as only incidental to the ornamental purpose and effect of the design. It distinguished ornamentation from functionality and concluded that the design had acquired a secondary meaning in

the market, identifying it with Saporiti, and that there was a likelihood of confusion among potential purchasers.

It thus ordered Craig to cease offering its sofas for sale unless there was prominently attached to each a label stating that the sofa was made in the United States "and is not of Italian design or manufacture."

## III.

Saporiti obtained a United States design patent on its sofa. The patent shows the front, rear and side views of the sofa. The patent claimed the entire design as shown in the drawings, but the distinctive feature of the design, of course, is the treatment of the back cushions and their interlocks with the modules. That patent expired in June 1981, and the essential question is whether Saporiti is entitled to the exclusive use of its design after expiration of the period of patent protection. Saporiti's design continues to be protected only if the design itself is found to be an unregistered trademark so that one who copies it may be said to have misrepresented the origin of his goods within the meaning of § 43(a) of the Lanham Act.[1]

A feature of a product may become an unregistered trademark if it is not functional and if it has acquired a secondary meaning in the marketplace by which it is identified with the maker or producer of the goods. *Vibrant Sales v. New Body Boutique,* 652 F.2d 299, 303 (2d Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). It is not functional if it is an "arbitrary embellishment—primarily adopted for purposes of identification and individuality," but "an important ingredient in the commercial success of the product" is clearly functional. *Ives Laboratories, Inc. v. Darby Drug Co.,* 601 F.2d 631, 643 (2d Cir.1979).

In the context of § 43(a) of the Lanham Act, "functional" is not synonymous with "utilitarian," nor is it the antonym of "ornamental." Indeed, ornamentation may be

1. 15 U.S.C.A. § 1125(a).

the thing that sells the product. Thus, it was held that the words "Damn I'm Good," inscribed on flat metal bracelets, were functional and could not be treated as a trademark. *Damn I'm Good, Inc. v. Sakowitz,* 514 F.Supp. 1357 (S.D.N.Y.1981). Similarly, the design on hotel china is the principal thing that attracts potential buyers, for it makes the china aesthetically appealing. As an important ingredient in the saleability of the goods, it is functional and may not be treated as an unregistered trademark. *See Pagliero v. Wallace China Co.,* 198 F.2d 339 (9th Cir.1952).

The interlocking design of the back cushions has a utilitarian purpose in keeping the cushions in place. There is little utility in concealing seams and presenting an attractive appearance when the sofa is viewed from the rear, but these attributes do enhance the saleability of the goods. To the extent that they do, there is functionality in those elements of the design as well.

It is a mistake, however, to attempt to break the design down into components or to concentrate on the purposes of its unique features. It was the overall design that Saporiti claimed in its design patent. It is the overall design which Craig has copied, and it is the overall design which some interior decorators testified had become associated with Saporiti. This overall design makes the sofas attractive to buyers despite enormously expensive price tags, and there is no arbitrary embellishment or label which might be considered a trademark.[2]

We conclude that the design is functional.

Our patent laws provide limited protection for new and useful inventions, but, beyond the protection of the patent laws, the general policy of our law is to favor competition. Early comers may not exclude latecomers. One may not welcome new competition, but one may not legally complain of it. There is a minute exception, of course, for one may not appropriate another's trademark. That exception, however, tends to enhance competition and to keep it fair. The newcomer may produce and sell identical goods, so long as he does not use another's figurative label. The design of the sofa here is not just a label; it is a principal characteristic of the sofa.[3]

### IV.

Since we have concluded that the design is functional, we need not consider the district court's finding that it had acquired a secondary meaning in the marketplace.

### V.

Since there was error in the conclusion that the design should be treated as an unregistered trademark, the judgment must be reversed.

---

2. An arbitrary embellishment may be entitled to protection though added to an, otherwise, functional design. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir.1979).

3. Between March 1974 and December 1981, Saporiti filed forty U.S. design patent applications. Thirty of them had been granted, while the remaining ten were still pending.