**METRO KANE IMPORTS, LTD., Plaintiff,**

v.

**ROWOCO, INC., Defendant.**

**No. 84 Civ. 6099 (RWS).**

United States District Court, S.D. New York.

Oct. 2, 1984.

Weiss, Dawid, Fross, Zelnick & Lehrman, P.C., New York City, for plaintiff; Richard Lehv, New York City, of counsel.

McAulay, Fields, Fisher, Goldstein & Nissen, New York City, for defendant; Terry Sue Zisowitz, Lloyd McAulay, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff, Metro Kane Imports, Ltd. ("MKI") has moved for a preliminary injunction against defendant Rowoco, Inc. ("Rowoco") pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), New York Common Law, and the "Mold Statutes" of California, Michigan, and Tennessee, to bar Rowoco's continued importation

and sale of a hand operated orange juice squeezer allegedly identical to that imported and sold by MKI. The motion is denied upon the following findings and conclusions.

**Prior Proceeding**

The action was commenced on August 24, 1984. Expedited discovery was had, and the motion was heard on September 21, 1984. No factual dispute was presented, and no surveys of consumer loyalty to the products involved were submitted. Consequently, no evidentiary hearing was required.

**Facts**

Since September, 1982, MKI, a New York corporation, has been the exclusive wholesale distributor in the United States of a manual orange juice squeezer produced in Mexico. Through the end of August 1984, sales totalled 32,929 units, producing $823,243 in gross revenues from this product for MKI, 90% of MKI's total income. MKI has spent in excess of $100,000 on advertising and promotion in numerous trade publications, gourmet periodicals, and the general press. The juicer, which is based on a rack and pinion mechanism similar to that of other juicers, has a rather distinctive exterior. MKI does not mark its juicer with any source—identifying label on the product itself, although the seven inch cube-box in which the product is packaged has one-half inch lettering naming the product "Mighty OJ." The name Metro Kane Imports appears only in one-eighth inch black lettering barely visible against a blue background in the bottom corner of each facade of the box. The packaging features a picture of one juicer, a glass of orange juice, and three and one-half oranges.

Rowoco is a New York corporation that imports and distributes kitchen products. Rowoco purchased an MKI juicer in September 1983, and in April 1984 Rowoco was approached by the representative of a Taiwanese Trading Company who attempted to interest Rowoco in a Taiwanese produced juicer identical in all visible respects to MKI's product. Rowoco placed its first order for the Taiwanese product ("Rowoco Juicer") in April, 1984. Rowoco has now contracted with the Taiwanese Trading Company for 5,400 juicers and plans to distribute the juicers nationwide, although it has as yet not undertaken to advertise the juicer in any way other than by including it in Rowoco's catalogue of over 1,800 items.

The President and Vice-President of Rowoco claim to have no knowledge of how the Rowoco juicer is produced, although there has been no denial of MKI's claim that the "Mighty OJ" was used as a "plug" for a mold from which the Rowoco juicer was created, and MKI has introduced affidavit evidence to that effect. Certain pieces of the Rowoco juicer, however, have not been produced from molds of the Mighty OJ.

The Rowoco juicer is packaged in a seven-inch cube box which pictures two juicers on each of four facades, surrounded by a glass of orange juice and various citrus fruits. The box is labeled "Rowoco Juicer," with the "Rowoco" lettering in one-quarter inch high white letters against a dark green background at the top of the box, and the "Juicer" lettering in one and one-half inch high white lettering against a green background immediately below. Although the Rowoco juicer itself does not have any permanent source identification, it is sold with a three and one-half inch long white piece of tape with the red printed words "The Rowoco Juicer" attached on the front of the mechanism. This label is attached to the removable receptacle into which oranges are placed and presumably will be detached as the juicer is used. Unpacked and subsequent to being washed, the two products are therefore identical in all observable respects.

**Conclusions**

MKI in this action seeks a preliminary injunction and must persuade the court that: 1) either a) there is a likelihood of success on the merits or b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tips de-

cidedly in favor of the moving party, and 2) irreparable harm will result in the absence of the injunction. *United States v. Bedford Assoc.*, 618 F.2d 904, 912 (2d Cir.1980), *Caulfield v. Board of Ed. of New York City*, 583 F.2d 605, 610 (2d Cir.1968).

### 1. Success on the Merits

### A. Lanham Act

■ For a product's configuration and design to be protectable under § 43(a) of the Lanham Act the moving party must establish 1) that the design features allegedly copied are non-functional and 2) that these design features had acquired secondary meaning in the marketplace by which the product is identified with the maker or producer of the goods. *Industria Arredamenti Fratelli Saporiti v. Chas. Craig, Ltd.*, 725 F.2d 18, 222 U.S.P.Q. 754, 755 (2d Cir.1984); *Vibrant Sales v. New Body Boutique*, 652 F.2d 299, 303 (2d Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

■ A feature of a product which is "functional" cannot constitute a protectable trade design under § 43(a) of the Lanham Act. *Dallas Cowboy Cheerleaders Co., Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir.1979); *Upjohn Co. v. Schwartz*, 246 F.2d 254 (2d Cir.1957). Defining those aspects or attributes of a design that are functional, and therefore capable of replication, rather than arbitrary, and therefore protected, is the necessary starting point.

■ The Supreme Court has stated that a functional feature is one that "is essential to the use or purpose of the article or [that] affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850–51 n. 10, 102 S.Ct. 2182, 2186 n. 10, 72 L.Ed.2d 606 (1982). In *Industria Arredamenti, supra,* the Second Circuit elaborated on these terms, and specifically defined the relationship between aesthetic and functional elements of a design:

> It is not functional if it is an "arbitrary embellishment—primarily adopted for purposes of identification and individuality," but "an important ingredient in the commercial success of the product" is clearly functional. *Ives Laboratories, Inc. v. Darby Drug Co.*, 601 F.2d 631, 643, 202 USPQ 548, 558 (2d Cir.1979).
>
> In the context of § 43(a) of the Lanham Act, "functional" is not synonymous with "utilitarian," nor is it the antonym of "ornamental." Indeed, ornamentation may be the thing that sells the product. Thus, it was held that the words "Damn I'm Good," inscribed on flat metal bracelets, were functional and could not be treated as a trademark. *Damn I'm Good, Inc. v. Sakowitz*, 514 F.Supp. 1357, 212 USPQ 684 (S.D.N.Y.1981). Similarly, the design on hotel china is the principal thing that attracts potential buyers, for it makes the china aesthetically appealing. As an important ingredient in the saleability of the goods, it is functional and may not be treated as an unregistered trademark. *See Pagliero v. Wallace China Co.*, 198 F.2d 339, 95 USPQ 45 (9th Cir.1952).

*Id.* 725 F.2d 18, 222 U.S.P.Q. at 755–56.

MKI in its argument has emphasized exclusively the first aspect of the Supreme Court's definition of functionality—that bearing on the feature's being essential to the use of the article. MKI has consequently argued that the rack and pinion mechanism which is the heart of the juicer can be encased in an unlimited array of facades. There is little doubt that the choice of a particular casing for the rack and pinion system is not mandated by the mechanism itself. Indeed, other juicers are on the market in this country that feature the same rack and pinion gear system and are identical in general layout and mechanical operation yet have markedly different appearances. Were I free to do so, I would be tempted to accept this definition of functionality in the context of Lanham Act claims, and I would find that the Rowoco juicer copies non-functional elements of the MKI juicer.

The Second Circuit definition of "functional," however, has recently emphasized

in *Industria Arredamenti, supra,* the scope of the second element stated by the Supreme Court—the aesthetic contribution a feature makes to the quality of a product. Therefore, just as a pattern on china or the lack of a seam on a sofa constitute merely aesthetic attributes of the product, yet are considered functional because they contribute to the saleability of the good, so the modern, robotesque appearance of the MKI juicer must be considered a functional attribute of the product. As such it may not become an unregistered trademark whose replication is unlawful under § 43(a) of the Lanham Act.

■ Although the finding that the attributes of the Mighty OJ that were copied were functional would be sufficient to dispose of the Lanham Act claim, the conclusion is buttressed by the further finding that no secondary meaning has been acquired by MKI's product.

The doctrine of secondary meaning holds that "a descriptive or geographical mark receives protection against copying only if consumers have come to associate it with a particular manufacturer or source. When this association is established and the mark has thus acquired secondary meaning, a second comer is barred from using it because such use is virtually certain to create confusion in the public mind as to the source of the product." *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950, 953 (2d Cir.1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1983). The connection that the consumer must recognize and value is that between the product and a particular producer. In finding such secondary meaning in another context the Second Circuit concluded that "[b]y secondary meaning we mean that romance readers associate the Harlequin Presents cover with a particular series and publisher ... Harlequin's extensive national advertising, its phenomenal sales success, and the results of a consumer survey indicate that romance readers correlate the Harlequin Presents cover with Harlequin and the Harlequin Presents Series." *Harlequin Enterprises Ltd. v. Gulf and West-*

*ern Corp.,* 644 F.2d 946, 949–50 (2d Cir. 1981). Judge Hand wrote that for a party to demonstrate secondary meaning it was necessary that it be demonstrated that "the appearance of his wares has in fact come to mean that some particular person—the plaintiff may not be individually known—makes them, and that *the public cares who does make them, and not merely for their appearance and structure."* *Crescent Tool Co. v. Kilborn & Bishop Co.,* 247 F. 199, 300 (2d Cir.1917).

■ Proof of secondary meaning is consequently difficult, since it is necessary to establish a public desire for the product of a particular manufacturer. Popularity and sales alone cannot establish this secondary meaning, and advertising expenditures are demonstrative only of an effort to establish secondary meaning, not success of the effort. *Eli Lilly and Co. v. Revlon, Inc.,* 577 F.Supp. 477, 483 (S.D.N. Y.1983); *Ralston Purina Co. v. Thomas J. Lipton, Inc.,* 341 F.Supp. 129, 134 (S.D.N. Y.1972). Although copying of a product is considered evidence of secondary meaning, *Harlequin, supra,* at 950, assuming without deciding that such is the case, MKI has not submitted evidence that establishes an affirmative link in the public mind to the particular producer. Moreover, the advertising in catalogues and newspapers submitted as exhibits by the parties shows that the name of MKI was often eliminated or if present was only barely visible. The advertisements focused on the "appearance and structure" of the juicer only. The product itself does not have MKI's name on it, and the box in which the juicer is packaged likewise emphasized the structure of the object, not the name of the producer. On these facts, I conclude that MKI has failed to demonstrate that the juicer has acquired secondary meaning.

Because an examination of the likelihood of confusion necessitates a prior finding that the product at issue has acquired secondary meaning, *see Eli Lilly, supra,* at 482–83, *Vibrant Sales, supra,* at 304, the issue of consumer confusion need not be dealt with at length. It is worth observing,

however, that Rowoco's juicer does have a label—though temporary—affixed to it and the packaging for the Rowoco juicer clearly exhibits the name Rowoco. Such labeling has been held in certain circumstances sufficient to eliminate fears of consumer confusion. *See Bose Corporation v. Linear Design Labs, Inc.,* 467 F.2d 304 (2d Cir. 1972); *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (1979).

I conclude that MKI has not demonstrated either likelihood of success on the merits or serious questions providing a basis for litigation with respect to the Lanham Act claim. Neither the copying of non-functional elements nor the acquisition of secondary meaning in the marketplace have been established.

### B. New York Statutory and Common Law Claims

■ Whether MKI's claim is brought under §§ 368–d or 349 of New York's General Business Law or under common law unfair competition principles, MKI cannot prevail unless it demonstrates a protectable interest in the design of the juicer. Although a showing of secondary meaning is not essential, MKI still must establish the misappropriation of a property interest in the design. *Perfect Fit Industries, supra,* at 953; *Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774, 781–82 (2d Cir. 1964), *cert. denied,* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). Since New York cannot "give protection of a kind that clashes with the objectives of the federal patent laws," *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231, 84 S.Ct. 784, 788, 11 L.Ed.2d 661 (1964), the analysis undertaken above with respect to MKI's ability to protect the juicer applies here as well.

### C. "Mold" Statutes

■ MKI also brings an action based upon statutory provisions in California, Michigan, and Tennessee to enjoin the sale of Rowoco's product in those states. These statutes, California Business and Professions Code §§ 17300 and 17301; Michigan Compiled Laws Annotated §§ 445.621—445.624; and Tennessee Code Annotated § 47–15–115, make it unlawful to duplicate through direct molding processes a manufactured item made by another without the permission of the initial producer. The relevant testimony. with respect to this claim consists solely of the affidavit of Edward Arnao, President of Advance Pressure Castings Corp., submitted by MKI; the deposition of Arnao by Rowoco; and Rowoco's claim of no information with respect to the manufacturing process used.

Based on the evidence, I conclude that MKI has demonstrated a substantial likelihood of success in establishing a violation of the mold statutes. With respect to the Lanham Act and New York State claims, however, I find that MKI has shown neither a likelihood of success nor that serious issues for litigation exist.

### 2. Irreparable Harm to MKI

MKI asserts two grounds for a finding that irreparable harm will result in the absence of a preliminary injunction. First, MKI claims that consumer confusion in trademark cases constitutes irreparable harm. Second, MKI claims that the competition threatened by the larger Rowoco could drive MKI into bankruptcy. Since I have concluded that there has not been a showing of a likelihood of success on the merits under the Lanham Act or New York Statutory or Common Law claims, I need not address the general assertion of irreparable harm. I note, however, that founding a claim of irreparable harm on the assertion of consumer confusion is unlikely to succeed given my preliminary finding above with respect to consumer confusion. Further, an unsupported claim that competition from a larger entity will drive MKI into bankruptcy cannot be the basis of a finding of irreparable harm.

Since I have found that there is a likelihood of success with respect to the mold statutes, however, MKI could obtain a preliminary injunction against sales in these three states if it demonstrated irreparable harm from the failure to issue an injunc-

tion on sales in those states. MKI has introduced no evidence relating to the harm that will result from the failure to issue such an injunction. Extending my evaluation of MKI's claims of irreparable harm in the Lanham Act claim, I do not conclude that sales in those three states will produce irreparable harm.

### Conclusion

MKI has failed to demonstrate likelihood of success on either the Lanham Act or New York State claims. MKI did, however, establish a likelihood of success under the mold statutes of California, Michigan, and Tennessee. However, since MKI failed to establish that irreparable harm will result should an injunction not be granted with respect to Rowoco's sales in those states, no preliminary injunction is granted with respect to that claim. MKI's motion is denied.

**IT IS SO ORDERED.**