**METRO KANE IMPORTS, LTD., Plaintiff,**

v.

**ROWOCO, INC., Defendant.**

**No. 84 Civ. 6099(RWS).**

United States District Court, S.D. New York.

Sept. 16, 1985.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City (John Kurucz and Ronald R. Santucci, New York City, of counsel), for plaintiff.

McAulay, Fields, Fisher, Goldstein & Nissen, New York City (Lloyd McAulay and Terry S. Zisowitz, New York City, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Metro Kane Imports ("MKI") has moved for an injunction against defendant Rowoco, Inc. ("Rowoco") pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law § 368–d, New York Common Law, and the "Mold Statutes" of California, Michigan and Tennessee, to bar Rowoco's continued importation and sale of a hand-operated orange juice squeezer allegedly identical to that imported and sold by MKI. The motion is granted upon the record and papers of the consolidated June 24, 1985 hearing held pursuant to Fed.R. Civ.P. 65(a)(2) and the following findings and conclusions.

### Prior Proceedings

MKI's earlier motion for a preliminary injunction was denied in an opinion of Octo-

ber 2, 1984, 595 F.Supp. 702, which found, relying on *I.A. Fratelli Saporiti v. Charles Craig, Ltd.*, 725 F.2d 18 (2d Cir.1984), ("*Charles Craig*"), that the aesthetic form of the orange juice squeezer was a functional element not entitled to protection. The October 2, 1984 opinion was vacated, and the case remanded for reconsideration in light of *LeSportsac, Inc. v. K. Mart Corp.*, 754 F.2d 71 (2d Cir.1985). MKI has again sought an injunction pursuant to Fed.R. Civ.P. 65(a)(2), and a bench trial was held on June 24, 1985.

The facts of this case have been fully set forth in the court's previous opinion. After a one-day trial, no additional material facts were presented.

**Discussion**

In deciding whether a permanent injunction should be entered, a court must first determine whether the plaintiff has succeeded on the merits of the claim asserted. If so, the court must determine whether a balancing of the equities involved favors the grant of injunctive relief. *Sierra Club v. Alexander*, 484 F.Supp. 455 (N.D.N.Y. 1980), *aff'd mem.*, 633 F.2d 206 (2d Cir. 1980).

**I.   The Trade Infringement Claims**

**1.   Lanham Act**

■■■ Section 43(a) of the Lanham Act establishes a federal law of unfair competition by protecting the "trade dress" of a product as an unregistered trademark in certain situations. To acquire protection, the "total image of a product," which may consist of "features such as size, shape, [or] color ..." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983), must be nonfunctional and have acquired secondary meaning. The design of a product itself may be protectible as trade dress. *LeSportsac, supra*, at 75; *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir.1981) ("*Warner*").

■■■ *LeSportsac* made clear that functionality is a defense that the defendant must establish. *Id.* at 76. In *LeSportsac*, the court attempted to clarify the "obvious tension" between *Warner's* and *Charles Craig's* definitions of functionality. The

*Charles Craig* case, which formed the foundation of this court's October 2 opinion, was not explicitly overruled by *LeSportsac*, but the formulation of "functionality" was substantially altered. The Second Circuit's redefinition of functionality as expressed in *LeSportsac* stresses that a feature is functional if it "is essential to the use or purpose of the article or affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982). A design feature is essential only if it "is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough." *Warner Bros., Inc. v. Gay Toys, Inc.* (*Warner II*), 724 F.2d 327, 331, *quoted in LeSportsac, supra* at 76. And a design feature "affecting the cost or quality of the article" is "one which permits the article to be manufactured at a lower cost ... or which constitutes an improvement in the operation of the goods." *Id.* Rowoco has not met the burden of establishing functionality.

Finally, the Court in *LeSportsac* criticized one criterion of functionality relied upon in *Charles Craig* —that the feature be an "important ingredient in the commercial success of the product" or the "saleability of the goods"—as overinclusive and perverse in its effect of providing less protection to more attractive designs. While asserting that the specific result in *Charles Craig* was not inconsistent with the reasoning of *Warner*, because the feature protected in *Charles Craig* also constituted an "improvement in the operation of the goods," the principle that an aesthetic design can be functional purely because of its aesthetic quality promotes sales was weakened, if not eliminated.

The Mighty OJ's rack and pinion mechanism rests on aesthetic rather than functional considerations. The lever of the squeezer and the operating mechanism is common to many manual juicers which come in many shapes and forms, as demonstrated by the squeezers which were introduced in evidence. There was no evidence

that the attractive high-tech design of the Mighty OJ was "dictated" by the function to be performed or that the MKI design permitted the juicer to be manufactured at a lower price or altered the performance of the product. Indeed, the fact that other models, not nearly as attractive, are labeled as "commercial" squeezers, designed for maximum output and durability, establish that the pragmatic concern of performance was not paramount in designing the Mighty OJ's appearance. Indeed, MKI established that the placement of the Mighty OJ in the catalog of the Museum of Modern Art is a testament to its design quality.

Rowoco has attempted to break down the Mighty OJ design to prove that various elements, such as the shape of the handle or the distance between the legs, are functional. Yet this misconceives the nature of the injury, for MKI seeks protection for the combination and interaction of the various elements which might individually be functional. *See LeSportsac* at 76.

■ MKI is unable to succeed on its Lanham Act claim, however, because it has failed to demonstrate that secondary meaning exists. As explained in the court's earlier opinion in this case, secondary meaning is established when the purchasing public associates a product's trade dress with a single producer or source. *Inwood Labs, supra,* at 851 n. 11, 102 S.Ct. at 2187 n. 11. The only direct evidence of secondary meaning, and the most persuasive, would be a thorough consumer survey of the public's response to MKI's product design which indicated an association between the design and a particular producer. Such consumer surveys are entirely lacking in the evidence presented by MKI, thus depriving the trier of fact of this highly "desirable," if not essential, evidentiary data. *See LeSportsac, supra,* at 78. In the absence of such direct evidence, it becomes necessary to infer secondary meaning from proof of sales efforts and success, amount and manner of advertising, length and manner of use of the design and recognition by third parties. *See Saratoga Vichy Spring Co., Inc. v. Leh-*

*man,* 491 F.Supp. 141, 150 (S.D.N.Y.1979), *aff'd,* 625 F.2d 1037 (2d Cir.1980). Such an inference is not to be easily established since as a general rule popularity, sales, and advertising expenditures demonstrate only an effort to establish secondary meaning, not success of that effort. *Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. 477, 483 (S.D.N.Y.1983).

In *LeSportsac,* the Second Circuit found that a company's proof of "phenomenal sales success, substantial advertising expenditures, unsolicited media coverage, requests for third parties to license the use of its design and [defendant's] deliberate attempt to imitate its trade dress" was sufficient evidence to support a preliminary injunction without deciding whether such evidence would ultimately be persuasive. 754 F.2d at 78. MKI has presented far less convincing evidence of efforts to establish secondary meaning for its product. Indeed, under the prevailing standards for implying secondary meaning, it is difficult to imagine how any moderate-sized producer entering a market could expend the substantial resources necessary to uphold a finding of secondary meaning based on sales and advertising.

### 2. New York Law

In the court's earlier opinion, MKI failed to prevail under New York law because the court concluded that MKI had not demonstrated a protectable interest in the design of the juicer. This conclusion was reached based on the court's earlier interpretation of the functionality of the juicer's esthetic design. In light of *LeSportsac,* the remand and the above discussion, it now appears that MKI does have a protectable property interest in the design. Therefore, it becomes necessary to examine the other elements of an unfair competition claim under New York law.

While the lack of secondary meaning defeats MKI's Lanham Act claim, its unfair competition claim based on New York law does not require a showing of secondary meaning. Under New York law the focus of a trade dress infringement suit is

"whether or not the public is likely to be confused, rather than with whether the first comers' trade dress has acquired secondary meaning." *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir.1980).

■ Since secondary meaning is not a requirement under New York law, MKI need only establish a likelihood of confusion between the products. In this case, given the products' identical appearance, confusion is almost a certain result. The testimony and affidavit of Riki Kane, president of MKI, recounting specific instances of confusion, although ancedotal, corroborates the conclusion that confusion has occurred and is likely to recur. Given the minimal efforts of Rowoco to label its product, Rowoco's claim that its label eliminates the likelihood of confusion must be rejected. Moreover, Rowoco's admission of its intent to copy MKI's product raises a presumption that Rowoco has created a confusingly similar product. *Perfect Fit, supra*, at 954. Since the orange juice squeezer is not a purchase for which consumers can be expected to exercise a great degree of care, all of the above factors clearly establish the likelihood of confusion.

## II. Equitable Relief and Balance of Hardships

MKI's survival depends upon sales of the Mighty OJ. Faced with a less expensive, infringing product, MKI's sales have dropped radically, and MKI has lost important, high visibility markets. Mail catalogues and large department stores have opted to stock the Rowoco alternative, finding it both less expensive and part of an 1,800 product array of kitchenware (see Kane Affidavit). The impact of this market shift has been to eliminate MKI's profits, and continued infringement is potentially devastating to MKI. Testimony corroborates that MKI will fail without injunctive relief. A remedy at law in this context is inadequate.

The effect of an injunction on Rowoco, however, will be much less severe. Rowoco sells 1,800 items, has annual sales of $8,000,000 and sells other, non-infringing juicers. The balance of hardships favors MKI, and granting an injunction is warranted.

## III. Mold Statutes

■ MKI also brings an action based upon statutory provisions in California, Michigan, and Tennessee. These statutes, California Business and Professions Code § 17300 and 17301; Michigan Compiled Laws Annotated §§ 445.621–445.624; and Tennessee Code Annotated § 47–15–115, make it unlawful to duplicate through direct molding processes a manufactured item made by another without the permission of the initial producer. The Superior Court of California has granted an injunction based on its conclusion that the Rowoco juicer was made from a mold of the Mighty OJ. MKI has argued that the California decision precludes this court's independent consideration of the merits of that claim. In keeping with the federal rule of *res judicata*, which is backed by the Full Faith and Credit Clause of the Constitution and 28 U.S.C. § 1738, the California decision necessarily binds the two parties in this action. *See* J. Moore, *Moore's Federal Practice*, ¶ 10.406[1] (2d ed. 1984). With regard to the other two states, the evidence submitted, most importantly the September 12, 1984 deposition and the May 28, 1985 affidavit of Edward Arnao, provides ample support with respect to establishing violations of the mold statutes of Michigan and Tennessee.

## Conclusion

MKI has proven the elements necessary to establish the claims brought pursuant to New York law and the Mold Statutes of California, Michigan, and Tennessee. The balance of equities and inadequacy of a remedy at law therefore entitle MKI to an injunction. The injunction will prohibit the continued importation of the Rowoco juicer, the filling of orders placed but not yet filled, and the continued advertising of the Rowoco Juicer in future printings of the Rowoco catalog. Rowoco may, however,

fill any outstanding orders for the Rowoco juicer which derive either from existing catalogs or other advertising by purchasing MKI's Mighty OJ.

IT IS SO ORDERED.