SHEN MANUFACTURING COMPANY, INC., Plaintiff,

v.

SUNCREST MILLS, INC. and K Mart Corporation, d/b/a K Mart and K Mart Enterprises, Inc., Defendants.

No. 84 Civ. 2900 (CHT).

United States District Court, S.D. New York.

June 30, 1987.

Hart, Baxley, Daniels & Holton, New York City, for plaintiff; Charles E. Baxley, Roman Badiak, Alfred J. Will, of counsel: Ira Cohen, on brief.

Alexander, Unikel, Bloom, Zalewa & Tenenbaum, Ltd. by Alan L. Unikel, Mark J. Liss, Chicago, Ill., for K Mart Corp.; Louis S. Ederer, Buchman, Buchman & O'Brien, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Shen Manufacturing Company, Incorporated ("plaintiff" or "Shen") has brought this action against defendants Suncrest Mills, Inc. ("Suncrest") and K mart Corporation ("K mart"). Plaintiff, which manufactures a dishcloth decorated with the legend "Ritz A Dish," alleges that Suncrest and K mart (also collectively referred to as "defendants") violated three separate statutes by producing and selling dishcloths decorated with the legend "Rinse A Dish." The alleged acts include: (1) false designations of origin, a species of unfair competition prohibited by § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982); (2) unfair competition, prohibited by N.Y.Gen. Bus.Law § 133 (McKinney 1968); and (3) dilution of a trademark, prohibited by N.Y. Gen.Bus.Law § 368–d (McKinney 1984). Complaint, ¶¶ 11–19, 27–30. In addition to its claims asserted under state and federal statutes, Shen asserts a claim of common law unfair competition. Complaint, ¶¶ 20–26. Plaintiff seeks permanent injunctive relief, recall and destruction of infringing goods, compensatory and punitive damages, and attorneys' fees.

The Court has jurisdiction of this matter pursuant to 15 U.S.C. § 1121 (1982 and Supp.1987), 28 U.S.C. § 1338(a) and (b) (1976), and the general doctrine of pendent jurisdiction. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b) (1976).

The action was tried to the Court. The Court concludes that Suncrest violated § 43(a) of the Lanham Act and § 133 of the N.Y.Gen.Bus.Law by producing and selling to K mart and others, dishcloths confusingly similar in appearance to the dishcloth manufactured by plaintiff, and that it did so intentionally and in bad faith. Thus, both state and federal laws authorize the issuance of permanent injunctive relief against Suncrest, and the Lanham Act provides support for ordering it to pay compensatory and punitive damages and attorneys' fees to Shen. Suncrest will also be ordered to recall and destroy all infringing dishcloths.

The Court further concludes that K mart violated § 43(a) of the Lanham Act and § 133 of the N.Y.Gen.Bus.Law by selling the infringing dishcloths in its retail stores, although it did not act in bad faith. Since Shen has established a likelihood of confusion, but has failed to prove any instances of actual confusion, the issuance of permanent injunctive relief against K mart is appropriate, but K mart will not be required to pay damages or attorneys' fees to Shen. Although there is no evidence that K mart continues to purchase the infringing dishcloths from Suncrest, K mart will be ordered to recall and destroy all those remaining in its stock.

In view of the Court's decision to enjoin the acts of defendants pursuant to federal law, it is unnecessary to reach Shen's claim for injunctive relief on a dilution theory brought pursuant to Section 368–d of the N.Y.Gen.Bus.Law.[1] In any event, it is unlikely that Shen would be able to recover on a dilution theory since it has not established that its trademark is particularly famous or celebrated, *Cue Publishing Co. v. Colgate–Palmolive Co.*, 45 Misc.2d 161, 167, 256 N.Y.S.2d 239, 244 (Sup.Ct.N.Y. Co.), *aff'd*, 23 A.D.2d 829, 259 N.Y.S.2d 377 (App.Div. 1st Dep't 1965), nor that its trade dress is particularly memorable or distinctive. *20th Century Wear, Inc. v. Sanmark–Stardust Inc.*, 815 F.2d 8, 11 (2d Cir.1987).

### Findings of Fact

Shen, a well established manufacturer of kitchen textiles, is a Pennsylvania corporation with its principal place of business in West Conshohocken, Pennsylvania. Its product line includes kitchen towels, dishcloths, dust cloths, placemats, aprons, potholders and toaster covers. Its manufacturing operation is located in Montrose, Pennsylvania.

Suncrest, an importer and distributor of kitchen textiles, including dishcloths, is a New York corporation with its principal place of business in New York, New York. Default judgment as to Suncrest was entered on November 13, 1986, based on its failure to appear and defend at the trial of this action in October 1986.

K mart, a chain of retail discount stores selling a variety of different products, including dishcloths and other kitchen textiles, is a Michigan corporation with its principal place of business in Troy, Michigan. K mart conducts business in the State of New York and within the jurisdiction of this Court.

Shen acquired the John Ritzenthaler Company ("Ritz Co.") in about 1968, is the successor-in-interest thereto, and has been doing business under its name since that time. After acquiring the Ritz Co., Shen began manufacturing and distributing in the United States a high quality dishcloth decorated with the legend "Ritz A Dish" ("the Ritz cloth"). The Ritz cloth, made of an off-white cotton waffle-weave fabric, is used for washing dishes. It measures approximately 13 by 14 inches, with three parallel colored stripes running across its face—one in the center and one near each end of the cloth. The stripes are flat wo-

---

1. It is also unnecessary to discuss Shen's claim of common law unfair competition, since relief has already been granted pursuant to both state and federal laws.

**1202**

ven to contrast with the cloth's back ground, which is waffle woven. The center stripe is about 3½ times wider than the outer stripes. The legend "Ritz A Dish" is woven into the center stripe, in off-white capital letters. The letter "A" is one-half the size of the other letters in the legend. Pictorial advertisements for the Ritz cloth consistently emphasize the center stripe and its accompanying legend. There is no evidence to establish that the design or legend of the Ritz cloth is functional. Transcript ("Tr.") 61–62.

The Ritz cloth was first introduced in or around 1935 by the Ritz Co., which has been engaged in the kitchen textiles business since approximately 1892 and was the original owner of the "Ritz" trademark. Tr. 92. The legend "Ritz A Dish" is derived from the name and trademark of the Ritz Co. Although the name "Ritz" is a registered trademark now belonging to Shen, the legend "Ritz A Dish" has never been registered with the U.S. Patent and Trademark Office. Tr. 104.

The "Rinse A Dish" dishcloth ("Rinse cloth"), manufactured and distributed by Suncrest and sold on a retail basis by K mart, is practically identical in appearance to the Ritz cloth. It is made of off-white cotton waffle-weave fabric of approximately the same dimensions, and three colored, flat-woven stripes run across its face with the legend "Rinse A Dish" woven in off-white letters across the center stripe. The letter "A" is smaller than the other letters in the legend, as is true of the Ritz cloth. The Rinse cloth differs from the Ritz cloth in only three ways: (1) the word "Rinse" replaces the word "Ritz" in its legend; (2) a colored border runs around the outer perimeter of the cloth; and (3) a tag sewn into the hem of the cloth provides care instructions, states that the cloth is 100% cotton, handloomed in India, and contains the words "The Kitchen Addition," a registered trademark of Suncrest.

Sometime after 1979, Edward Hedaya, the sole principal of Suncrest, traveled to India to arrange for the manufacture of the Rinse cloths and similar "Dry A Dish"

dish towels. He gave an Indian manufacturer one of the Ritz cloths to use as a "reference" for the specifications of the Rinse cloths and "Dry A Dish"[2] towels he wished to order. Tr. 28–29, 31.

K mart first purchased Rinse cloths from Suncrest in about February 1984, Tr. 10, 206, and they were first offered in its retail stores in the last week of that month. Tr. 415. K mart was the prime customer of Suncrest for Rinse cloths, Tr. 33, and ceased ordering or selling them in April 1985. Tr. 297–99. There is no evidence that K mart was aware during the time it sold the Rinse cloths, that Hedaya had patterned them after the Ritz cloth.

*Conclusions of Law*

1. *Plaintiff's Claims of Unfair Competition*

Section 43(a) of the Lanham Act protects against two types of acts denominated "unfair competition"—false designations of origin and false descriptions or representations related to products entering the stream of commerce. 15 U.S.C. § 1125(a). The provision protects both registered and unregistered trademarks, as well as words, symbols and designs used in the packaging of a product, commonly known as "trade dress." *Le Sportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir.1981). The standard of recovery for unfair competition involving unregistered trademarks and trade dress traditionally has required proof that: (1) plaintiff's symbol is inherently distinctive or has achieved secondary meaning (buyers associate it with a single, though anonymous, source), *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 133 (S.D.N.Y.1972); and (2) defendant's actions create a likelihood of confusion among buyers. *See* 1 J.T. McCarthy, Trademarks and Unfair Competition §§ 15:2.D., 15:4.A. (2d ed. 1984). After a prima facie case of infringement is established, the action may be defended by proving that plaintiff is seeking to protect design features of a functional

2. There is no claim that "Dry A Dish" infringes the "Ritz A Dish" mark. Tr. 16.

nature, which are outside the protection of § 43(a). *Le Sportsac*, 754 F.2d at 75; *Metro Kane Imports, Ltd. v. Rowoco, Inc.*, 595 F.Supp. 702, 705 (S.D.N.Y.1984).

The threshold determination in a trademark infringement case involves classifying the mark plaintiff seeks to protect into one of four categories: generic, descriptive, suggestive, or arbitrary/fanciful. *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir.1985). Categorization of the mark is important because it determines the evidentiary burdens plaintiff will be required to bear in order to protect its word mark and trade dress.

Generic terms refer to the genus of which the particular product is a species, and are accorded no trademark protection. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). "Dishcloth," for example, is a generic term. Terms which describe a product's features, qualities or ingredients in ordinary language receive slightly more protection. Descriptive terms may be protected if secondary meaning is established. *Thompson*, 753 F.2d at 212–13. Terms which do not describe but rather, merely suggest the features of a product, requiring the purchaser to use "imagination, thought and perception to reach a conclusion as to the nature of goods ...," are accorded even greater protection. *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). Suggestive marks may be protected even if secondary meaning is not proven, because "the connection between the mark and the source is presumed." *Thompson*, 753 F.2d at 216. Finally, the greatest trademark protection is accorded to arbitrary or fanciful terms, those which are invented solely for trademark usage. *Abercrombie*, 537 F.2d at 11 n. 12.

In this action, plaintiff seeks to protect not only the word mark "Ritz A Dish," but also the design incorporating the mark, which together function as the trade dress of the product. Ritz A Dish is a composite word mark containing a descriptive portion, "A Dish," preceded by "Ritz," a registered trademark of the Ritz Co., and a shorthand designation of the company name. The word mark always appears across a colored stripe in the center of a dishcloth. It is a symbol that attracts attention and is the most prominent element of the dishcloth as a whole. *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 938 (10th Cir.1983). Thus, protection of the word mark and the design, both elements of the trade dress, must be considered as a package. *See Le Sportsac*, 754 F.2d at 76 (trademark protection accorded to "particular combination and arrangement of design elements" that identified product). Cases in which Lanham Act relief was denied to parties seeking to protect solely trade dress or product design are distinguishable. *E.g., Metro Kane*, 595 F.Supp. at 707, injunction granted on state law grounds, 618 F.Supp. 273, 277 (S.D.N.Y.1985), *aff'd*, 800 F.2d 1128 (2d Cir.1986); *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 304 (2d Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

If Shen's trade dress alone were being considered, Shen would be required to prove that the design of the towel, apart from the word mark, had achieved secondary meaning, *Vibrant Sales*, 652 F.2d at 304; *Metro Kane*, 595 F.Supp. at 707; or was willfully copied by the defendant. *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1134 (2d Cir. 1982) ("slavish copying" by junior user indicates intent to obtain "free ride" at senior user's expense); *Perfect Fit Indus. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980) (failure to prove secondary meaning immaterial where trade dress was intentionally copied); *Ideal Toy Corp. v. Plawner Toy Mfg.*, 685 F.2d 78, 82 (3d Cir.1982) ("admission of copying is itself persuasive evidence of secondary meaning"); *Metro Kane*, 595 F.Supp. at 707. However, if the word mark "Ritz A Dish" is held to be suggestive, secondary meaning need not be proven. *Thompson*, 753 F.2d at 216.

Both Shen and K mart have proceeded under the assumption that the word mark "Ritz A Dish" is descriptive. It is true that

the words "A Dish" are descriptive, but the mark also contains the word "Ritz," which is not descriptive. For the reasons discussed below, the court holds that the "Ritz A Dish" mark is suggestive. The contrast between "Rinse A Dish" and "Ritz A Dish" perfectly illustrates the distinction between the two categories of marks.

"Rinse A Dish" tells the purchaser what to do with the product, and thus, is descriptive. "Ritz A Dish" gives a clue as to the product's use, but does not fully describe it. The suggestive process occurs when a purchaser, after seeing a legend printed on a cloth, is required to rely on imagination, thought and perception to ascertain the function of the product. *Stix Products,* 295 F.Supp. at 488.

The legend's suggestiveness is achieved through the use of the word "Ritz," whose primary definition is akin to snobbish or fashionable. It seems incongruous to use such a word in connection with a dishcloth. However, this incongruity is what catches the purchaser's attention. *See, e.g., American Home Prod. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 106 (2d Cir.1978). In a trademark context, primary definitions of words serve merely to stimulate secondary definitions in the purchasers' minds, which come to be associated with the producer. *Ralston Purina,* 341 F.Supp. at 133. What does it mean to "ritz" a dish? To clean it in a fashionable way? To rinse it in a snobbish way? Various possibilities might occur to the purchaser. The point is that the legend uses the company name, Ritz, in a creative way to suggest the use of the product and its source. That is the very essence of a suggestive mark.

■ In view of the Court's holding that the mark is suggestive, secondary meaning need not be proven at all. However, even if the mark were construed as descriptive and therefore secondary meaning had to be proven, the Court does not find that Shen's failure to introduce survey evidence is problematic. The courts in this jurisdiction have emphasized that plaintiff may prove a number of different factors to establish secondary meaning, and that "no 'single factor is determinative.'" *Thompson,* 753

F.2d at 217, quoting *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 663 (2d Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The factors include (1) advertising expenditures, (2) consumer surveys, (3) sales success, (4) unsolicited media coverage of the product, (5) attempts to copy the mark, and (6) length and exclusivity of the mark's use. *Thompson,* 753 F.2d at 217.

Shen was able to prove at trial without contradiction that: (1) it expended substantial amounts on advertising its products, with the Ritz cloth being the centerpiece of these promotional efforts, Tr. 101–102; (2) the Ritz cloth had achieved sales success, Tr. 153, 163; (3) Suncrest intentionally copied the trade dress and word mark of the Ritz cloth; and (4) the trade dress and word mark "Ritz A Dish" had been used by Shen and its predecessor in interest on dishcloths for at least fifty years. Thus, it is immaterial that Shen failed to introduce survey evidence of secondary meaning. *Thompson,* 753 F.2d at 217.

The Court chooses to disregard the survey evidence introduced by K Mart, as it was flawed in two respects. First, it identified the product incorrectly as a towel, not a cloth. Tr. 341. Second, it requested a conclusion only regarding the appearance of the "towel," totally disregarding the significance of the word mark "Ritz A Dish." Tr. 342. There is ample proof that consumers associate the intellectual property Shen seeks to protect with a single, though anonymous, source. *Thompson,* 753 F.2d at 215; *Perfect Fit,* 618 F.2d at 953; *Metro Kane,* 595 F.Supp. at 706 (extensive display of trademark in product advertisements is evidence of secondary meaning).

■ The next factor the Court must examine is likelihood of confusion, the *sine qua non* of trademark infringement and unfair competition. *Spring Mills,* 689 F.2d at 1129. To prevail, plaintiff must establish the "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d

Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Plaintiff may rely on a number of different types of evidence, including (1) strength of the mark for which protection is sought, (2) degree of similarity between the two marks, (3) proximity of products in the marketplace, (4) sophistication of purchasers, (5) quality of defendant's product, (6) instances of actual confusion, and (7) defendant's intent in adopting the mark. *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). All of the factors must be considered together, and no one factor is preeminent. *Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co.*, 631 F.Supp. 735, 741 (S.D.N.Y.1985), *aff'd*, 799 F.2d 867 (2d Cir.1986).

■ The Court finds that factors (1), (2) and (7) are persuasive here, and factors (3), (4) and (5), while less persuasive, lean slightly towards supporting plaintiff's case.[3]

Distinctiveness of a trademark determines the inquiry into its strength. Although arbitrary marks are considered the strongest, *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir.1987), word marks categorized as suggestive, if unique or original, may be classified as strong marks. *Plus Prod. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir.1983). The Court finds that the legend "Ritz A Dish" used as an ornamentation on dishcloths is a unique and original mark.

The Court further concludes, upon a visual inspection of the two dishcloths, that they are almost identical. The strong resemblance of the combined features of the two products establishes a high likelihood of confusion between them. *Perfect Fit*, 618 F.2d at 955.

The seventh *Polaroid* factor incorporates the "second comer" doctrine, that one who intentionally copies a mark is presumed to have created confusion. To quote from the *Mobil* case: "In this circuit and others, numerous decisions have recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." 818 F.2d at 259, quoting *Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755, 758 (2d Cir.1960). The evidence is clear that Suncrest willfully and consciously imitated Shen's nonfunctional trade dress and word mark. This factor together with the two already discussed, demonstrates that the *Polaroid* test has been satisfied.

Analysis of the other *Polaroid* factors, which generally weigh in plaintiff's favor, does not affect the Court's conclusion in this case. There is some testimony in the record comparing the quality of the two cloths. Tr. 126, 331. It appears that the Ritz cloth is a better quality product than the Rinse cloth, but there is not a great degree of difference. Tr. 331. The rule in this Circuit is that a "second comer" may be liable for infringement and unfair competition even if his goods are of a high quality. *Mobil*, 818 F.2d at 259–60.

Moreover, the purchasers of Ritz cloths may certainly be characterized as casual purchasers, since the product costs less than $5. Such purchasers are more likely to become confused, because they are likely to devote less time and attention to making a decision to purchase the item. *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979); *Grotrain, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons*, 523 F.2d 1331, 1342 (2d Cir.1975); *Beech–Nut, Inc. v. Warner–Lambert Co.*, 480 F.2d 801, 804 (2d Cir. 1973).

The evidence regarding the proximity in the market of the two products does not weigh strongly in favor of either plaintiff or defendant. The Ritz cloth is generally sold in department stores, gift shops and specialty boutiques, Tr. 90. It has not been sold in discount stores such as K mart, Tr. 75, 145, which was the principal customer of Suncrest. However, it appears that Suncrest sold some Rinse cloths to stores

---

**3.** Plaintiff has failed to establish any instances of actual confusion. See discussion *infra* under "The Remedy."

which would not be categorized as discount stores, and thus, could be described as potential customers of Shen. Tr. 117, 136, 139–41, 143. On balance, the Court holds that likelihood of confusion is clearly established, so Shen is entitled to injunctive relief under federal and state law. *See Perfect Fit*, 618 F.2d at 952–53.

■ Once plaintiff has established that its mark is eligible for protection and that there is a likelihood of confusion, the defendant may defeat the action by proving that the thing sought to be protected is a functional feature of the product. Functional features are those "essential to a product's use as opposed to those which merely identify it." *Le Sportsac*, 754 F.2d at 75. The purpose of this defense is to prevent monopolization of practical design features. The Court rejects K mart's contention that the aesthetically pleasing design and accompanying legend of the Ritz cloth, because it contributes to the product's salability, is therefore functional. The design and legend which combine to create the "look" of a product may be important ingredients contributing to its commercial success, but if they are used to identify the product and distinguish it as a genuine Shen item, they will not be construed as functional and may be protected as an unregistered trademark. *Id.* at 78. Defendant has not met its burden of establishing its entitlement to rely on the functionality defense.

### 2. *The Remedy*

■ The Court concludes that there is a likelihood of confusion between the Ritz cloth and the Rinse cloth, and that both Suncrest and K mart should be permanently enjoined from producing, distributing, or selling the Rinse cloth. *Perfect Fit*, 618 F.2d at 955.

However, Shen faces several barriers to obtaining monetary relief. First, in order to recover damages in a cause of action under § 43 of the Lanham Act, a plaintiff must prove at least one instance of actual confusion. *Warner Bros.*, 658 F.2d at 79; *Perfect Fit*, 618 F.2d at 955; *DC Comics, Inc. v. Filmation Assoc.*, 486 F.Supp. 1273,

1279 (S.D.N.Y.1980). In *PPX Enter., Inc. v. Audiofidelity Enter., Inc.*, 818 F.2d 266 (2d Cir.1987), the court described the type of proof required. To prove actual confusion, plaintiff must introduce the testimony of a retailer or consumer who was confused when confronted with the two items, or a market survey demonstrating actual confusion of consumers. *Id.* at 271. The best evidence plaintiff could muster was a document showing that the Shillito Rikes Department Store returned to Shen for credit a batch of Ritz cloths which contained a number of Rinse cloths that had been returned to the store. Tr. 119–120. However, a representative of Shillito Rikes was not called to testify to the circumstances of the return, so the letter does not suffice to prove actual confusion. Therefore, in order to obtain monetary relief in this action, Shen must resort to equitable theories.

The Court has broad discretion, under principles of equity, to order defendants to account for their profits derived from the sale of Rinse cloths. *Burndy Corp. v. Teledyne Industries, Inc.*, 748 F.2d 767, 772 (2d Cir.1984); *Elnicky Enterprises, Inc. v. Spotlight Presents, Inc.*, 213 U.S.P. Q. 955, 957 (S.D.N.Y.1982). Shen has proven that Suncrest's Hedaya took the Ritz cloth to India as a "reference" for the production of the Rinse cloth, and introduced evidence of prior acts of piratical copying of its Flemish Wonder towel by Suncrest. Tr. 109. Shen argues that Suncrest should be ordered to account for its profits to remedy its unjust enrichment and deter it from willfully infringing in the future. The undisputed proof of intentional copying of the Ritz cloth, as well as similar past acts, is sufficient support for ordering Suncrest to account for its profits. *Id.*

However, Shen has not proven that K mart was a party to the intentional copying. The evidence shows that the K mart buyer who dealt with Suncrest, George Glassmeyer, was unaware of the Ritz trademark or the Ritz cloth. Tr. 47. The Court finds his testimony to be credible. Also, K mart was not aware of Shen's

infringement claim until after the commencement of this action in April 1984. Thus, it appears that K mart innocently purchased the Rinse cloths, unaware that sale of the cloths would constitute unfair competition.

After it received notice of Shen's claim, K mart ordered all its stores to cease selling Rinse cloths. Tr. 315–16. There is some evidence that K mart may have been lax in enforcing this order, because Rinse cloths were purchased at a K mart store during the trial of this matter. Tr. 434. However, there is no evidence to indicate that this resulted from anything but negligence on the part of individual K mart stores. Exercising its broad discretion to fashion a remedy, the Court deems an accounting of K mart's profits on the Rinse cloths to be unwarranted. It is sufficient to enjoin K mart from any further sales of the cloths, and order it to offer up any remaining Rinse cloths for destruction.

The Court holds that Suncrest's intentional copying of the Ritz cloth makes this an "exceptional case" warranting the imposition of punitive damages and attorneys' fees. *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 687 F.2d 563, 571 (2d Cir.1982); *RCA Records v. Kory Records, Inc.*, 197 U.S.P.Q. 908, 909 (E.D. N.Y.1978). The matter will be referred to a U.S. Magistrate for an inquest as to the amount of damages and attorneys' fees to be paid by Suncrest. The accounting of profits should be based on Suncrest's sales, since there is no evidence that Shen lost sales as a result of Suncrest's unfair competition.

Accordingly, the Clerk of the Court is directed to enter judgment in favor of Shen. The parties are directed to settle a form of judgment within ten (10) days granting a permanent injunction against Suncrest and K mart, ordering them to recall and destroy all infringing dishcloths, and denying Shen's request for an accounting of profits, punitive damages and attorneys' fees as against K mart. The remainder of Shen's claims are to be referred to a U.S. Magistrate for computation of damages.

So ordered.